Oscar RODRIGUEZ and Nelly Rodriguez, his wife, and Mercedes Bana, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Meritt STEIRHEIM, as County Manager for Dade County, Florida, A. H. Blake, as Property Appraiser for Dade County, Florida, and Harry L. Coe, Jr., as Director of the Department of Revenue for the State of Florida, Defendants.

No. 78–683–CIV–JAG.

United States District Court,
S. D. Florida,
Civil Division.

Feb. 26, 1979.

John Lazarus, Peter Siegel, Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiffs Rodriguez & Bana.

Stuart L. Simon, Dade County Atty., Miami, Fla., by Deborah Bovarnick, Asst. County Atty., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE came on to be heard upon defendants' Motion to Dismiss the amended complaint, and plaintiffs' Motion for Partial Summary Judgment. The Court has considered the record, the memoranda submitted and the argument of able counsel. Indeed, the insistence of plaintiffs' claim has required more than the usual effort.

The threshold question before the Court is one of jurisdiction; specifically, whether this Court has jurisdiction over the subject matter of plaintiffs' cause of action.

Plaintiffs' bring suit pursuant to 42 U.S.C. §§ 1981 and 1983 (hereinafter § 1981 or § 1983); the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; and Article I, Section 8 of the United States Constitution. Under §§ 1981 and 1983, judicial power to decide these claims is asserted pursuant to 28 U.S.C. § 1343(3) and

(4), the statutory jurisdictional bases for plaintiffs' claims that defendants' denial of the benefits of the Florida homestead exemption law is violative of federal law. Plaintiffs additionally assert federal question jurisdiction under 28 U.S.C. § 1331.

Plaintiffs assertions are made on behalf of a class consisting of "all aliens who reside in the United States and Dade County, Florida, under color of law, in property they own, but who have not been granted permanent resident alien status by INS (Immigration and Naturalization Service), and who under Florida law, but for their status with INS, would be entitled to a homestead tax exemption . . . (and) one subclass: all aliens who reside in the United States and Dade County, Florida, under color of law, in property they own, but who have not been granted permanent resident alien status by INS, and who under Florida law, but for their status with INS, would be entitled to a homestead tax exemption; (sic) who because of their status with INS have not been allowed by the Property Appraiser of Dade County, Florida, to fill out an application for a homestead tax exemption." Plaintiffs' Amended Complaint, counts 10 and 11 at page 5.

Defendants argue, inter alia, that this action is barred by 28 U.S.C. § 1341 (hereinafter § 1341), commonly known as the Tax Injunction Act of 1937, 50 Stat. 738, or the Anti-Injunction Statute. The jurisdictional bar of § 1341 represents a codification of significant policies of federalism against granting plaintiffs' requests for preliminary and permanent injunctive relief and for declaratory relief as to their claims. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *Hargrave v. McKinney*, 413 F.2d 320 (CA5 1969).

The conflict between §§ 1341 and 1343 was explored by the Fifth Circuit Court of Appeals in *Bland v. McHann*, 463 F.2d 21 (CA5 1972) which considered a civil rights claim that certain Edwards, Mississippi municipal property tax assessments were racially discriminatory. Plaintiffs therein urged that the § 1341 proscription against federal court jurisdiction did not apply since § 1983 did not require an exhaustion of state court remedies, the relief under § 1983 being supplemental. Speaking for the panel, J. Gewin stated:

> We do not disagree with the general rule that exhaustion is not required in § 1983 cases; however, in this case § 1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances we are convinced that § 1341 must prevail. 463 F.2d at p. 24.

More recently, the Fifth Circuit has considered the § 1341 prohibition in the context of jurisdictional assertions on the basis of diversity of citizenship, 28 U.S.C. § 1332, and on the predicate of a federal question, 28 U.S.C. § 1331. In *Alnoa G. Corporation v. City of Houston, Texas*, 563 F.2d 769 (CA5 1977), the standard of the applicability of § 1341 was set forth as follows:

> The test for applying § 1341 was succinctly set forth in *United States Steel Corp. v. Multistate Tax Commission*, 367 F.Supp. 107, 115 (S.D.N.Y.1973). The court there said: 'In determining whether to exercise jurisdiction in a particular case, the Court must carefully weigh two countervailing considerations set forth by the statute: (1) a long standing policy of non-interference by federal courts in state tax matters; and (2) fairness to plaintiffs, i. e., whether plaintiffs have an effective state remedy. 563 F.2d at p. 771.

The non-interference part of this test has been adverted to earlier with the citation of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), et seq.; and is discussed at length in *Hargrave v. McKinney*, 413 F.2d 320, 325–326 (CA5 1969); see generally Wright, *Law of Federal Courts* §§ 48–52A, pp. 205–236 (3d ed. 1976).

It is the second part of the test, "fairness to plaintiffs; i. e., whether plaintiffs have an effective state remedy?" which is the issue before this court.

Plaintiffs argue that there is no effective state remedy, notwithstanding the scheme set forth in Florida Statutes, Chapter 194, Administrational Judicial Review of Property Taxes; Part I, Administrative Review, §§ 194.011–194.042; Part II, Judicial Review §§ 194.171–194.231; and Chapter 196, § 196.151 (F.S.1977).

This argument is based upon certain consequences flowing from the case of *Juarrero v. McNayr*, 157 So.2d 79 (Fla.1963) (hereinafter *Juarrero*).

In *Juarrero*, certain "Cuban refugees" were denied a favorable disposition of their suit to compel the allowance of the Florida homestead property tax exemption. The Florida Supreme Court analyzed their situation as it was in 1963 as follows:

> It is true that a resident of another state in this country may abandon residence in that state, come to Florida, purchase a home, reside in it, and declare it to be his permanent residence and become entitled to the homestead exemption provided by Section 7, Article X of our Constitution. Such person must make such declaration 'rightfully' and in 'good faith'. This might also be true in the case of one from another country who is in this country with a *permanent* visa. Such persons have the freedom and right with certainty to make and declare a bona fide intention of permanent residence in the home owned and located in this state. This is not so, however, in the case of a citizen and former resident of a foreign country who is here under the authority of nothing more than a *temporary* visa, because such person has no assurance that he can continue to reside in good faith for any fixed period of time in this country. Consequently, we hold he cannot 'legally', 'rightfully' or in 'good faith' make or declare an intention which he has no assurance he can fulfill or carry out because of the temporary nature of the visa. In other words, he does not have the legal ability to determine for himself his future status and does not have the ability legally to convert a temporary residence into a permanent home. 157 So.2d at p. 81.

This decision of the Florida Supreme Court was followed in another state court suit brought by other "Cuban refugees" situated similarly to those in *Juarrero*. *Lopez v. Goode*, 293 So.2d 775 (Fla. 3d DCA) (trial court order dismissing cause with prejudice; aff'd per curiam based upon *Juarrero* without opinion).

My brother, the Honorable Norman C. Roettger, Jr., had earlier dismissed the Lopez' cause of action in this court citing § 1341 and the failure of the complaint to allege circumstances indicating the absence of a plain, speedy and efficient remedy in the courts of Florida. *Lopez v. Goode*, No. 72–885–Civ–NCR (S.D.Fla., July 18, 1972) (unreported decision).

By referring to the Lopez' litigation, plaintiffs suggest not only that they had no plain, speedy and efficient remedy in state court, but, in fact, no remedy at all.

■ Neither the judicial decisions nor § 1341 require that the state remedy be the best remedy available or even equal to or better than the remedy which may be available in the federal courts. "Section 1341 merely requires that the state remedy be 'plain, speedy and efficient.'" *Bland v. McHann*, 463 F.2d 21, 29 (CA5 1972).

■ Florida Statutes provide such a remedy.

Any uncertainty which may exist as to the effectiveness of Florida's remedy stems from the rule of decision in *Juarrero*. The uncertainty is understandable since it is unclear whether the Florida Supreme Court was construing *federal law* or setting forth *state law* in arriving at its decision therein.

If the court construed federal law, it is clear that both circumstances and the federal law have changed considerably since 1963. The most important circumstance "has been the reception of large numbers of Cuban refugees from the Castro regime, usually on parole . . . (Further) in 1966 (three years after Juarrero) Congress authorized the Attorney General in his discretion, to grant adjustment of status to natives and citizens of Cuba who had been inspected or admitted or paroled into the

United States after January 1, 1959, and had been physically present in the United States for at least two years, if they apply for adjustment and are admissible for permanent residence . . . The statute's benefits are discretionary, and adjustment may be denied in appropriate cases, even though eligibility is established." 1 and 2 C. Gordon & H. Rosenfield, *Immigration Law and Procedure* §§ 2.27(h) at pp. 2–212, 213; 7.8d at pp. 7–80, 80.1 (1978 ed.)

This power of adjustment permits changing of a Cuban alien's status from that of a parole or temporary admittee to that of an alien lawfully admitted for *permanent* residence provided certain criteria are met. Thus it seems apparent that the *Juarrero* dichotomy between those holding *temporary visas* and those holding *permanent visas* is no longer clear cut under federal law.

In the recent Supreme Court case of *Elkins v. Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978), for example, a class of nonimmigrant resident aliens (those holding G–4 visas or their dependents) sued the University of Maryland in the person of its President alleging that the institution's failure to grant them "in-state" status violated various federal laws including §§ 1981 and 1983, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Supremacy Clause.

The Supreme Court stated:

(T)he gravamen of their dispute is unquestionably whether, as a matter of federal and Maryland law, G–4 aliens can form the intent necessary to allow them to become domiciliaries of Maryland . . Accordingly, the question whether G–4 aliens have the capacity to acquire Maryland domicile is potentially dispositive of this case. Since the resolution of the question turns on federal statutory law and Maryland common law as to each of which there are no controlling precedents, we first set out the correct meaning of federal law in this area and then *sua sponte* certify the case to the Court of Appeals of Maryland in order to clarify state law aspects of the domicile question. 98 S.Ct. 1345, 1347.

The correct meaning of federal law was set forth in a detailed exposition of the Immigration and Nationality Act of 1952, 66 Stat. 163, as amended by 8 U.S.C. § 1101 et seq. see 98 S.Ct. at pp. 1347–1350. Because of the adjustment of status mechanism (8 U.S.C. § 1255), it was determined that *federal* law created no legal disability as to a G–4 alien's ability to become a Maryland domiciliary.

This same adjustment mechanism is applicable to plaintiffs in the present cause.

It now appears that there is no disability under *federal* law preventing Cuban refugees from forming an intent to permanently reside which would satisfy the requirements of the Florida homestead tax exemption.

Further, Florida's controlling precedent as set forth in *Juarrero* is now of uncertain effect in light of changed circumstances and changes in the applicable federal law.

The Supreme Court in *Elkins* noted the importance of the state law question by certifying it rather than deciding it as urged in the dissent. *Elkins* did not present any § 1341 question. These plaintiffs do. The resolution of this state tax question is an important matter for both Florida and plaintiffs. The proper forum for its determination, however, is provided by Florida law.

A recent opinion of the Third Circuit Court of Appeals held that § 1341 did not bar a civil rights action where the gravamen of the complaint was "that the method of assessing the value of plaintiffs' property, on which real estate and school taxes (were) based, (was) intentionally racially discriminatory in violation of 42 U.S.C. §§ 1981, 1983 (1970), and the Fourteenth Amendment." *Garrett v. Bamford*, 538 F.2d 63, 65 (CA3 1976). The Court's analysis of the Tax Injunction Act and its legislative history led it to the general rule that injunctive or declaratory relief against state taxes can only be sought in federal court where the state forum is inadequate.

"Under the 1937 Act, the inquiry into state remedies seeks to ascertain whether

the state, in this case Pennsylvania, provides plaintiffs with a 'plain, speedy and efficient remedy' for adjudicating the claims alleged in their complaint. Supreme Court decisions construing this statutory language offer two essential points of guidance. First, although it can be argued that Congress meant to establish a more stringent standard for federal intervention, the decisions indicate that 'plain, speedy and efficient' means no more than the prior equity standard of 'adequacy.' Second, it is sufficient for a finding of inadequacy that the availability of the state remedy be merely uncertain. 538 F.2d at p. 67."

As noted, Florida statutes provide such a "plain, speedy and efficient" remedy. The certain availability of this remedy must not be confused with the failure to obtain the desired end through the proper means.

This Court shares the sense of the Fifth Circuit as expressed in *Alnoa G. Corporation v. City of Houston, Texas, supra,* to wit:

> At present, plaintiff merely raises the spectre of a series of arbitrary decisions by the council. This is not sufficient to hold the state-provided remedy inadequate. However, were such potential opportunities for abuse to become a reality, the adequacy of the state remedy might then be seriously questioned. 563 F.2d at p. 772.

Should plaintiffs in future be precluded from filing for homestead exemption, or from protesting against a state property tax in Florida the jurisdictional bar of § 1341 might then be questioned. In the meantime the remedies provided by Florida are the correct means to the plaintiffs' desired end.

The Court finds that § 1341 presently divests this court of subject matter jurisdiction as to the plaintiffs' cause.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1. That Plaintiffs' Motion for Partial Summary Judgment be and the same is hereby denied.

2. That the Defendants' Motion to Dismiss be and the same is hereby granted.

3. That the Plaintiffs' Amended Complaint be and the same is hereby dismissed without prejudice the court presently being without subject matter jurisdiction of this action.

DONE AND ORDERED at the U. S. Courthouse in Miami, Florida, this 26th day of February, 1979.