426 So.2d 539 (1982)
Richard J. OSTERNDORF, et al., Petitioners,
v.
John TURNER, et al., Respondents.
No. 61948.
Supreme Court of Florida.
December 16, 1982.
On Rehearing February 3, 1983.
*540 Richard J. Osterndorf, Daytona Beach, for petitioners.
Jim Smith, Atty. Gen. and Barbara Staros Harmon, Asst. Atty. Gen., Tallahassee, for respondents.
Robert J. Winicki, Jacksonville, for amicus curiae.
Barry Richard of Roberts, Baggett, La-Face, Richard & Wiser, Tallahassee, for H. Lee Moffitt, Speaker, and the Florida House of Representatives, amicus curiae.
OVERTON, Justice.
This is a petition to review a decision of the Fifth District Court of Appeal reported as Osterndorf v. Turner, 411 So.2d 330 (Fla. 5th DCA 1982). The issue concerns the constitutionality of section 196.031(3)(e), Florida Statutes (Supp. 1980), which grants an enhanced homestead exemption of $25,000 to homeowners who have been residents of the state for five consecutive years immediately prior to claiming the exemption, while homeowners with less than five years residency receive only the standard $5,000 exemption.
The district court held the statute constitutional and certified the following questions of great public importance:
1. Does section 196.031(3)(e), Florida Statutes (Supp. 1980), violate the equal protection clause or the due process *541 clause of either the state or federal constitution?
2. Does section 196.031(3)(e), Florida Statutes (Supp. 1980), violate the provisions of article VII, section 6, of the Constitution of Florida, as amended in 1980?
411 So.2d at 335.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we answer the questions in the affirmative, holding unconstitutional that part of section 196.031(3)(e) which limits the $25,000 homestead tax exemption to those homeowners who have lived in Florida for five consecutive years immediately prior to claiming the exemption. The $25,000 exemption, in our view, is applicable to all bona fide permanent residents. Our decision is based solely on the equal protection clause of the Florida Constitution and is prospective for the taxable year 1983 and subsequent years except for those persons who have judicially challenged the statute in a timely manner.
The home has a history of special significance in Florida law. Protection from the forced sale of homestead realty was part of the 1868 constitution (see art. X, § 1, Fla. Const. (1868)). In 1934, article X, section 7, as modified in 1938, was added to the then existing 1885 constitution to provide for a $5,000 homestead tax exemption similar to that of article VII, section 6(a), of the 1968 constitution. Although the forced sale exemption requires the claimant to be the head of a family and the tax exemption does not, both require the individual claiming the exemption to be a resident of Florida. See Holden v. Gardner, 420 So.2d 1082 (Fla. 1982); Crosby and Miller, Our Legal Chameleon, The Florida Homestead Exemption: I-III, 2 U.Fla.L.Rev. 12 (1949); Note, Our Legal Chameleon is a Sacred Cow: Alienation of Homestead under the 1968 Constitution, 24 U.Fla.L.Rev. 701 (1972).
In 1980, changes in the homestead tax exemption provisions were brought about by inflation and the concern that a Proposition 13-type provision could pass in Florida.[1]See Pajcic, Weber, and Francis, Truth or Consequences: Florida Opts for Truth in Millage in Response to the Proposition 13 Syndrome, 8 Fla.St.U.L.Rev. 593 (1980). At a special election held on March 11, 1980, article VII, section 6(c), Florida Constitution, was amended to provide an enhanced homestead tax exemption of $25,000 for school district ad valorem taxes, to be implemented "[b]y general law and subject to conditions specified therein."[2]
On October 7, 1980, the voters approved article VII, section 6(d), Florida Constitution, which provided for a three-step enhanced homestead exemption for non-school district ad valorem taxes which also was to be implemented "[b]y general law and subject to conditions specified therein." Under this provision the exemption was raised from $5,000 to $15,000 in 1980, to $20,000 in 1981, and to $25,000 in 1982.[3]
*542 To implement these enhanced homestead tax provisions, and apparently to reduce their local tax impact, the legislature enacted section 196.031(3)(d) and (e), Florida Statutes (Supp. 1982), which reads as follows:
(d) For every person who is entitled to the exemption provided in subsection (1) and who has been a permanent resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, the exemption is increased to a total of $25,000 of assessed valuation for taxes levied by governing bodies of school districts.
(e) For every person who is entitled to the exemption provided in subsection (1) and who has been a resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, the exemption is increased to a total of the following amounts of assessed valuation for levies of taxing authorities other than school districts: $15,000 with respect to 1980 assessments; $20,000 with respect to 1981 assessments; and $25,000 with respect to assessments for 1982 and each year thereafter.
The petitioners, who have resided in Florida for less than five years, challenged the five-year residency prerequisite to their entitlement to the $25,000 homestead tax exemption for 1982 under section 196.031(3)(e).[4] In the trial court, the state filed, without objection, the affidavit of Representative Ralph Haben, then Speaker of the House, to establish the purpose of the statute. Speaker Haben expressed four legislative bases: (1) that new residents have an immediate fiscal impact upon local government's capital outlay and should pay their own share of this tax burden; (2) that tax savings should be passed on to longer term residents who have in recent years contributed tax dollars that have created a revenue surplus and made the increased tax exemption possible; (3) that the statute would discourage fraudulent homestead exemption applications; and, (4) that the statute would avoid the possibility of excessive immigration of individuals who desire lower taxes but are in need of many governmental services if Florida became too much of a tax haven.
The trial court granted a final summary judgment to the tax collector, concluding that the right to receive an increased ad valorem tax exemption was neither a fundamental right guaranteed by the United States Constitution nor a basic necessity of life, the denial of which penalizes the exercise of the constitutional right to travel. Having so concluded, the trial court used the equal protection "rational basis" test to determine the validity of section 196.031(3)(e). Finding the purpose of the statute is to require new residents to aid in offsetting the immediate fiscal impact they have on local governments, while providing long-time residents an increased exemption due to their past tax payments, the trial court held that the rational basis test was satisfied and that the statute was valid.
The district court affirmed and agreed with the finding of the trial court that there was a proper rational basis and concluded that the statute imposed a valid durational residency requirement. According to the district court, a homestead tax exemption is reviewed under the rational basis test because it is neither a basic necessity of life nor a fundamental political right and it "does not impose a significant penalty on the right to travel." 411 So.2d at 333. The district court further held that the reasons expressed by Speaker Haben supplied a rational basis for the state to impose this durational residency requirement. The district court also reasoned that the language *543 of the constitutional provision granting the enhanced exemption gave the legislature the authority to establish this type of durational residency requirement and that its decision was not in conflict with our decision in Sparkman v. State, 58 So.2d 431 (Fla. 1952). We disagree.
The determining question is whether the statute prescribing the disparate tax treatment of resident homeowners violates the equal protection clause of article I, section 2, of the Florida Constitution.[5]
Numerous cases have considered the constitutionality of residency requirements. The federal cases, although controlling on federal issues, are also relevant and persuasive to the consideration of whether Florida's equal protection clause has been violated. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the United States Supreme Court found unconstitutional a one-year durational residency requirement as a condition for receiving welfare benefits. The Supreme Court rejected the argument that eliminating this type of residency requirement would dilute the quality of services to present long-term residents, stating:
[Such] reasoning would logically permit the State to bar new residents from schools, parks, and libraries or deprive them of police and fire protection. Indeed it would permit the State to apportion all benefits and services according to the past tax contributions of its citizens. The Equal Protection Clause prohibits such an apportionment of state services.
Id. at 632-33, 89 S.Ct. at 1330. In Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), the Supreme Court found a one-year residency requirement for voting unconstitutional as violative of the equal protection clause of the fourteenth amendment of the United States Constitution because it was not necessary to further a compelling state interest. The Court emphasized in its opinion the difference between bona fide residency requirements and durational residency requirements, and expressed the view that "durational residence requirements, representing a separate voting qualification imposed on bona fide residents, must be separately tested by the stringent standard" of being necessary to promote a compelling governmental interest. Id. at 344, 92 S.Ct. at 1004. In Memorial Hospital v. Maricopa County, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Supreme Court found unconstitutional durational residency requirements which deprived indigents of free medical care.
On the other hand, in Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court upheld an Iowa statute which imposed a one-year residency requirement as a prerequisite to filing for divorce, and in Starns v. Malkerson, 326 F. Supp. 234 (D.C. Minn. 1970), aff'd, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the Court approved a district court ruling that permitted Minnesota to condition the entitlement to less costly in-state tuition on a one-year durational residency requirement. In Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), however, the Court noted that "to apportion tuition rates on the basis of old and new residency ... would give rise to grave problems under the Equal Protection Clause of the Fourteenth Amendment." Id. at 450 n. 6, 93 S.Ct. at 2235 n. 6.
The recent decision in Zobel v. Williams, ___ U.S. ___, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), is important with regard to the issues involved. In Zobel, Alaska amended its constitution to establish a permanent fund into which the state deposits at least twenty-five percent of its mineral income each year. In 1980, the Alaska legislature *544 enacted a dividend program to annually distribute a portion of the fund's earnings directly to the state's adult residents. Under the plan, each adult resident would receive one dividend unit for each year of residency subsequent to 1959, the first year of Alaska's statehood. This plan was challenged by residents who had moved to Alaska in 1978. Alaska attempted to justify the residency distinction on the basis that it was a reasonable state objective to reward citizens for past contributions. The Supreme Court held that "that objective is not a legitimate state purpose." 102 S.Ct. at 2314 (emphasis added). The majority opinion expressed the view that
If the States can make the amount of a cash dividend depend on length of residence, what would preclude varying university tuition on a sliding scale based on years of residence  or even limiting access to finite public facilities, eligibility for student loans, for civil service jobs, or for government contracts by length of domicile? Could States impose different taxes based on length of residence? Alaska's reasoning could open the door to state apportionment of other rights, benefits and services according to length of residency. It would permit the states to divide citizens into expanding numbers of permanent classes. Such a result would be clearly impermissible.

Id. at 2314-15 (footnotes omitted) (emphasis added). In Zobel, the majority opinion did not consider the compelling state interest test but merely concluded that the Alaskan scheme did not meet the equal protection rational basis test. The majority opinion also clarified the application of Starns v. Malkerson, expressing the view that the one-year residency requirement for receiving benefits as an in-state student was justified only on the basis that it was necessary for the sole purpose of establishing bona fide residence. It should also be noted that five justices believed that the Alaska scheme was unconstitutional as infringing upon the right to travel, in violation of the privileges and immunities clause.
With regard to the constitutionality of homestead residency requirements, this Court, in Sparkman v. State, 58 So.2d 431 (Fla. 1952), struck down a one-year durational residency requirement. We found the statute to be "an unlawful attempt by the Legislature to alter, contract, or enlarge Section 7, Article X, by legislative enactment, contrary to the express pronouncements of this court that `Express or implied provisions of the Constitution cannot be altered, contracted or enlarged by legislative enactments.'" Id. at 432.
In Florida State Board of Dentistry v. Mick, 361 So.2d 414 (Fla. 1978), we addressed a statute which provided a "continuing residency" requirement. The statute provided that any dentist who did not maintain a residence and domicile in Florida would be issued upon application a conditional renewal certificate. This certificate prohibited the dentist from practicing in the state until the certificate was renewed on an annual basis subject to an evaluation by the Board as to continued skill and competency. We distinguished between a "continuing" residency requirement and a "durational" residency requirement, concluding that the statute did not bear a just and reasonable relationship to a legitimate state interest, and that under the circumstances the conditional certificate for non-resident dentists and the accompanying fee were "no more than a discriminatory license fee imposed on some members of a profession to which all admitted members have already been deemed qualified." Id. at 416.
In the instant case, we choose to hold section 196.031(3)(e) unconstitutional under the equal protection clause of article I, section 2, of the Florida Constitution, and therefore do not address its constitutionality under the equal protection clause of the fourteenth amendment and the privileges and immunities clause of the United States Constitution. We also do not need to apply Sparkman or to consider whether a strict scrutiny or compelling interest test is applicable because the five-year durational residency requirement of section 196.031(3)(e) fails even a minimum rational basis test.
*545 It is contended that article VII, section 6(d), Florida Constitution, allows the legislature to divide its resident citizens into two permanent classes for homestead tax exemption purposes. We reject this view and find that Florida's equal protection clause does not allow the legislature to establish two classes of permanent residents for homestead exemption. The statute in issue, not the constitutional provision, effectively establishes two categories of permanent residents for entitlement to homestead tax exemption. We find there is no rational basis for distinguishing between bona fide residents of more than five consecutive years and bona fide residents of less than five consecutive years in the payment of taxes on their homes. This disparate treatment of resident homeowners cannot be allowed if our equal protection clause is to have any real meaning. It is interesting to note that permanent residents of less than five years have all the other rights and privileges of permanent residents, including the right to vote, the right after six months to obtain a divorce, the right after one year to attend any state university as a resident student, and the right to protect their homestead under all the remaining homestead provisions of our constitution. They are in fact bona fide residents for all purposes except the enhanced homestead exemption.
We fully realize that tax exemptions and disparity in taxes are not totally prohibited. See, e.g., Shevin v. Kahn, 273 So.2d 72 (Fla. 1973), aff'd, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). However, there must be at least a rational basis for disparities to exist. None of the four bases argued by the state and expressed in Speaker Haben's affidavit meets the rational basis test. First, it is constitutionally prohibited for this state to impose different taxes on its citizens based solely on their length of permanent residence in the state. Second, it is not a legitimate state purpose to reward certain citizens for past contributions to the detriment of other citizens. Third, we find five years is an unreasonable period of time to establish bona fide residency and is unnecessary to discourage fraudulent homestead exemption applications. Fourth, the avoidance of possible or excessive immigration of individuals to this state is clearly not constitutionally permissible. Finally, the conditional language in article VII, section 6(d), Florida constitution, does not in our opinion give the legislature blanket authority to violate the equal protection clause of Florida's constitution.
We find that that portion of section 196.031(3)(e) which states "for the 5 consecutive years prior to claiming the exemption under this subsection" must be excised from the statute as unconstitutional, and hold that all permanent residents are entitled to the $25,000 homestead exemption provided in article VII, section 6(d), Florida Constitution. The purpose of this statutory provision is to properly implement article VII, section 6, Florida Constitution, and the remaining portions of that statute, after the noted phrases have been excised, properly implement the constitutional provision.
Our decision in this case is prospective only for the taxable year commencing January 1, 1983, except for those taxpayers who have timely judicially challenged the applicability of the residence requirement. Because the enhanced tax exemption for residents of less than five years has been denied in good faith reliance on a presumptively valid statute, we find that the taxpayers, other than those who challenged the statute, who were denied the enhanced exemption are not entitled to a refund. See Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973). The petitioners in this case, however, are entitled to a refund of the amount of additional taxes they paid by reason of the denial of the enhanced exemption, as are any other litigants who have timely judicially challenged the statute.
We recognize this decision will have a significant impact upon local governmental entities, but the constitutional provision which contains the $25,000 enhanced homestead exemption does not authorize one category of residents of this state to be favored over another category of residents. The reason for the equal protection clause *546 was to assure that there would be no second class citizens. To approve the validity of the statute would in reality establish a second class of citizens in Florida. We hold that section 196.031(3)(e), Florida Statutes (Supp. 1980), is unconstitutional to the extent that it prohibits residents of less than five years residency from receiving the enhanced exemption. Accordingly, the decision of the district court is quashed and this case is remanded for further proceedings to determine the amount of the refund petitioners are entitled to receive. The petitioners' application for attorney's fees was not properly or timely filed, and it is denied.
It is so ordered.
BOYD, McDONALD and EHRLICH, JJ., concur.
ALDERMAN, C.J., dissents with an opinion, with which ADKINS, J., concurs.
ALDERMAN, Chief Justice, dissenting.
I disagree with the majority's holding that section 196.031(3)(e), Florida Statutes (Supp. 1980), violates the equal protection clause of the Florida Constitution because it fails to meet the rational basis test.
In my view, the district court properly determined that in evaluating petitioners' claims of unconstitutionality, the rational basis test, rather than the strict scrutiny test, was the appropriate test to be applied. The parameters of this test were recently restated in In re Estate of Greenberg, 390 So.2d 40, 42 (Fla. 1980), wherein this Court said:
The rational basis or minimum scrutiny test generally employed in equal protection analysis requires only that a statute bear some reasonable relationship to a legitimate state purpose. That the statute may result incidentally in some inequality or that it is not drawn with mathematical precision will not result in its invalidity. Rather, the statutory classification to be held unconstitutionally violative of the equal protection clause under this test must cause different treatments so disparate as relates to the difference in classification so as to be wholly arbitrary. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954).
The Fifth District held that among the bases for this enactment was the desire that new residents help offset their immediate fiscal impact upon local governments' capital outlay, while affording long-term residents the increased exemption made possible by their tax dollars. I agree with the district court's conclusion that since this homestead exemption applies to real property taxes and since such property taxes inure only to the benefit of local government, this would be a rational basis upon which the state could base the durational residence requirement.
Further, although the majority emphasizes several times in its opinion that it is resolving this case solely on the basis of the state constitutional grounds, it states that Zobel v. Williams, ___ U.S. ___, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), is important to the constitutional issues involved in this case. Zobel, however, is inapposite to the present case since the statute held unconstitutionally violative of the equal protection clause by the Supreme Court in Zobel is distinctly different from the Florida homestead exemption statute. Unlike the Alaska statute, the Florida homestead exemption statute does bear a rational relationship to a legitimate state interest. The district court found that the questioned statute met the rational basis test, and I would approve its decision.
I would also approve the Fifth District's negative response to its second certified question of whether section 196.031(3)(e) violates article VII, section 6, Florida Constitution. It correctly decided that subsection (d) of this constitutional provision granted the legislature the authority to make entitlement to the increased exemption conditional upon the satisfaction of certain criteria.
ADKINS, J., concurs.

*547 ON REHEARING
OVERTON, Justice.
A petition for rehearing and clarification has been filed by the petitioner Osterndorf, requesting that since this Court declared section 196.031(3)(e), Florida Statutes (Supp. 1980), unconstitutional, we should also address the constitutionality of the durational residency requirements of section 196.031(3)(a), (b), and (d), so as not to leave the validity of these requirements open to conjecture. In response, the respondents Turner and the Department of Revenue have advised this Court that they
have no objection for this Court to address all of the durational residency requirements found in § 196.031, F.S., in the same manner. Respondents would take the same position on all the five-year durational residency requirements found in § 196.031, F.S.
... A uniform ruling on all the durational residency requirements found in § 196.031, F.S., would avoid a great deal of administrative confusion and unnecessary litigation and multiplicity of suits.
The respondents have also filed a petition for rehearing, supported by a memorandum submitted by counsel for the house of representatives, asking this Court to recede from its announced opinion and declare the five-year durational residency requirements constitutional.
Although the petitioner's pleadings filed in the trial court requested that sections 196.031(3)(d) and (3)(e) be declared unconstitutional, the trial court's order granting summary judgment to the tax collector stated that "[t]he issue before the Court is the constitutionality of section 196.03(3)(e) [sic] ..." and failed to mention subsection (3)(d) in the judgment upholding the constitutionality of (3)(e). Similarly, the opinion rendered by the district court of appeal in affirming the trial court action stated that the appeal was "from a final order of the trial court upholding the constitutionality of section 196.031(3)(e)... ." Osterndorf v. Turner, 411 So.2d 330, 331 (Fla. 5th DCA 1982). The questions certified to this Court by the district court only mentioned subsection (3)(e). Neither the order of the trial court nor the opinion of the district court referred to subsection (3)(d) or the other subsections creating durational residency requirements. Subsection (3)(d) was, however, clearly placed in issue by the petitioner's pleadings.
Counsel for the parties should have brought to the trial court's attention that subsection (3)(d) was in issue and that it should have been considered in the trial court's order, rather than waiting until now to seek review of this subsection when the case is almost through the appellate process. Because of the parties' joint request and the fact that subsection (3)(d) was an issue below, we agree to address the constitutionality of the five-year residency requirement for the $25,000 exemption for school district taxes set out in section 196.031(3)(d). We also agree to address this part of the statute because the wording of subsection (3)(d) and its related constitutional provision is identical to subsection (3)(e) and its related constitutional provision. There is absolutely no basis for distinguishing subsection (3)(d) from subsection (3)(e).
The $25,000 exemption for school district taxes is contained in and mandated by the Florida Constitution, article VII, section 6(d), which states that "the exemption shall be increased to a total of ... twenty-five thousand dollars... ." (Emphasis added.) The legislature then by statute established the five-year residency requirement. Because subsection (3)(d) is indistinguishable from subsection (3)(e), we hold subsection (3)(d) unconstitutional for the same reasons expressed in our previously rendered majority opinion in this case.
We decline, however, the parties' requests that we also consider the constitutionality of subsections (3)(a) and (3)(b). Subsection (3)(a) concerns homestead tax exemptions for persons sixty-five years of age or older, and subsection (3)(b) concerns the exemption available to disabled persons. Although these subsections also have a five-year residency requirement, the phraseology of the constitutional provision on which *548 they are based is different from the provision on which subsections (3)(d) and (3)(e) are based.[1] Further, and as important, the petitioner has never claimed to be entitled to the exemptions provided in subsections (3)(a) and (3)(b) and did not raise the issue of the constitutionality of these subsections in the trial court. This Court clearly has no jurisdiction to pass on the constitutionality of these subsections under these circumstances. In effect, the parties are asking this Court to render an advisory opinion with regard to these parts of the statute. This Court has no authority to render advisory opinions in this case and the constitutionality of subsections (3)(a) and (3)(b) can only be addressed when presented by real parties in interest. We realize it would be administratively beneficial for this Court to pass on all the durational residency requirements of section 196.031(3), but we have no authority to do so under these circumstances. If the parties wanted this Court to consider all the durational residency requirements, they should have placed these matters in issue in the trial court.
For the reasons expressed, we clarify our opinion by also holding section 196.031(3)(d) unconstitutional. We decline, however, to consider the constitutionality of subsections (3)(a) and (3)(b) in this action because they are not appropriately before us. We further deny the respondents' petition for rehearing.
It is so ordered.
BOYD, McDONALD and EHRLICH, JJ., concur.
ALDERMAN, C.J., concurs in part and dissents in part with an opinion.
ADKINS, J., dissents.
ALDERMAN, Chief Justice, concurring in part, dissenting in part.
I concur with that portion of the opinion on rehearing which states that because of the parties' joint request and the fact that section 196.031(3)(d), Florida Statutes (Supp. 1980), was an issue below, we will address the constitutionality of subsection(3)(d). I also agree that we cannot, in these proceedings, resolve the question of the constitutionality of subsections (3)(a) and (3)(b).
I dissent, however, from the majority's holding that subsection (3)(d) is unconstitutional. For the same reasons I expressed in my dissent to the previous opinion, I would find subsection (3)(d) constitutional.
NOTES
[1] Proposition 13 is an amendment to the California Constitution which restricts the amount of any ad valorem tax to one percent of the full cash value of property. For a more complete explanation of Proposition 13, see Lefcoe and Allison, The Legal Aspects of Proposition 13: The Amador Valley Case, 53 S.Cal.L.Rev. 173 (1979).
[2] Article VII, section 6(c), Florida Constitution, reads as follows:

By general law and subject to conditions specified therein, the exemption shall be increased to a total of twenty-five thousand dollars of the assessed value of the real estate for each school district levy. By general law and subject to conditions specified therein, the exemption for all other levies may be increased up to an amount not exceeding ten thousand dollars of the assessed value of the real estate if the owner has attained age sixty-five or is totally and permanently disabled and if the owner is not entitled to the exemption provided in subsection (d).
[3] Article VII, section 6(d), Florida Constitution, reads as follows:

By general law and subject to conditions specified therein, the exemption shall be increased to a total of the following amounts of assessed value of real estate for each levy other than those of school districts: fifteen thousand dollars with respect to 1980 assessments; twenty thousand dollars with respect to 1981 assessments; twenty-five thousand dollars with respect to assessments for 1982 and each year thereafter. However, such increase shall not apply with respect to any assessment roll until such roll is first determined to be in compliance with the provisions of section 4 by a state agency designated by general law. This subsection shall stand repealed on the effective date of any amendment to section 4 which provides for the assessment of homestead property at a specified percentage of its just value.
[4] In the instant case, only the constitutionality of section 196.031(3)(e) is considered. Section 196.031(3)(d) was not raised in the trial court, nor was it considered by the district court. Subsection (3)(d) has been held unconstitutional in a recent circuit court action, Winicki v. Mallard, No. 82-35-CA (Fla. 4th Cir.Ct. Sept. 29, 1982).
[5] Article I, section 2, of the Florida Constitution, reads as follows:

Basic rights.  All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap.
[1] According to article VII, section 6(c), Florida Constitution, "the exemption for all other levies may be increased up to an amount not exceeding ten thousand dollars of the assessed value of the real estate if the owner has attained age sixty-five or is totally and permanently disabled and if the owner is not entitled to the exemption provided in subsection (d)." (Emphasis added.)