Robert John WINICKI and Andrew Alexander Strauss, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Robert A. MALLARD, individually and in his capacity as the Property Appraiser of Duval County, Florida, on behalf of himself and all others similarly situated; Lynwood Roberts, individually and in his capacity as the Tax Collector of Duval County, Florida, on behalf of himself and all others similarly situated; Randy Miller, individually and in his capacity as the Executive Director of the Department of Revenue of the State of Florida; Jim Smith, in his capacity as the Attorney General of the State of Florida, Defendants.

No. 82–708–Civ–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 16, 1985.

Robert J. Winicki, Mahoney, Hadlow & Adams, Jacksonville, Fla., pro se.

Linda Logan Bryan, Office of Gen. Counsel, Jacksonville, Fla., and Barbara Staros Harmon, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN H. MOORE, II, District Judge.

This case was brought on July 7, 1982 by two Florida homeowners on behalf of themselves and all others similarly situated against Robert A. Mallard, individually and in his capacity as the Property Appraiser of Duval County, Florida; Lynwood Roberts, individually and in his capacity as the Tax Collector of Duval County, Florida; Randy Miller, individually and in his capacity as the Executive Director of the Department of Revenue of the State of Florida; and Jim Smith, in his capacity as the Attorney General of the State of Florida. Both Defendants Robert A. Mallard and Lynwood Roberts are sued respectively as representatives of the 67 property appraisers and tax collectors in the various counties throughout the State of Florida. On September 28, 1984 the parties filed a stipulation dismissing Jim Smith as a defendant in this case. Plaintiffs have alleged that their Federal constitutional rights, namely their rights as secured by the Privileges and Immunities Clause, the Due Process Clause, and the Equal Protection Clause of the Fifth and Fourteenth Amendments, and the Commerce Clause of the United States Constitution have been violated by Fla.Stat. § 196.031(3)(d)-(e) (the homestead tax exemption statute), and they seek redress pursuant to 42 U.S.C. § 1983. More specifically, Plaintiffs aver that the homestead tax exemption statute (the "Statute") which requires that a person reside in the

State of Florida for five consecutive years prior to claiming an additional ad valorem homestead tax exemption impairs the fundamental right to travel from one state to Florida, creates two classes of residents in the State of Florida, those who have been residents for five consecutive years and those who have not, discriminates against older individuals who, because of their age, have a shorter expected life span and who move into the State of Florida for retirement, and restricts the movement of goods and persons among the states.

Plaintiffs originally sought a declaratory judgment that the Statute is in violation of the United States Constitution, an injunction prohibiting the Defendants from enforcing the consecutive five-year residency requirement, and damages to the class for the resulting enforcement of the Statute and the inability of the class to claim the increased homestead exemption. For reasons that will become apparent below, Plaintiffs now seek only a declaration of the Statute's validity under the United States Constitution and an award of damages under § 1983 (Plaintiffs' response to Defendants' notice of supplemental authority, February 17, 1983).

*The Statute*

As chronicled by the Florida Supreme Court:

[t]he home has a history of special significance in Florida law. Protection from the forced sale of homestead realty was part of the 1868 constitution (*see* art. X, § 1, Fla. Const. (1868)). In 1934, article X, section 7, as modified in 1938, was added to the then existing 1885 constitution to provide for a $5,000 homestead tax exemption similar to that of article VII, section 6(a), of the 1968 constitution. Although the forced sale exemption requires the claimant to be the head of a family and the tax exemption does not, both require the individual claiming the exemption to be a resident of Florida. (citations omitted)

*Osterndorf v. Turner,* 426 So.2d 539, 541 (Fla.1982).

The present controversy has its origins in 1980 when amendments to Article VII, § 6 of the state constitution were approved by Florida voters. On March 11, 1980, the electorate voted by special election to amend Article VII, § 6(c) and provide for an enhanced school district homestead exemption of $25,000 for school district ad valorem taxes. The enhanced exemption was to be implemented by general law and subject to the conditions of general law. On October 7, 1980, the voters approved Article VII, § 6(d) providing for a three-step enhanced homestead exemption for non-school district ad valorem taxes. Once again, the exemption was to be implemented by general law and subject to conditions imposed therein.

Consistent with these public directives to implement the enhanced homestead tax provisions, the Florida Legislature enacted Section 196.031(3)(d) and (e) to read as follows:

(d) For every person who is entitled to the exemption provided in subsection (1) and who has been a permanent resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, the exemption is increased to a total of $25,000 of assessed valuation for taxes levied by governing bodies of school districts.

(e) For every person who is entitled to the exemption provided in subsection (1) and who has been a resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, the exemption is increased to a total of the following amounts of assessed valuation for levies of taxing authorities other than school districts: $15,000 with respect to 1980 assessments; $20,000 with respect to 1981 assessments; and $25,000 with respect to assessments for 1982 and each year thereafter.

At once the Statute came under constitutional attack by Florida homeowners who had resided in the state less than five years. Suits were filed in Volusia County (*Osterndorf v. Turner,* Case No. 81–260–CA–01, Division D); Duval County (*Winicki v. Mallard,* Case No. 82–3J–CA Division D); Pinellas County, (*Maguire v.*

*Schultz,* Case No. 80–14147–14 and *Fesperman v. Schultz,* Case No. 82–7074–16); and in the Orlando Division of this federal district (*Osterndorf v. Turner,* 505 F.Supp. 175 (M.D.Fla.1981) ).

The *Osterndorf* state action eventually found its way to the Florida Supreme Court in late 1982. On December 16, 1982, the Supreme Court of Florida ruled that Section 196.031(3)(e), *Fla.Stat.,* violated the equal protection clause of the Florida Constitution. *Osterndorf v. Turner,* 426 So.2d 539 (Fla.1982). On rehearing on February 3, 1983, Section 196.031(3)(d), likewise was found unconstitutional for the same reasons expressed in the December opinion. By expunging the statutory language which required a homeowner to be a resident for five years before qualifying for the enhanced exemption, the Court's decision enabled approximately 300,000 taxpayers to claim the enhanced $25,000 exemption for the taxable year 1983.

The budgetary problems and administrative difficulties associated with a massive refund led the Court to conclude that no retroactive relief would be awarded except to those taxpayers who had "timely judicially challenged" the residency requirement in the Statute. *Osterndorf* at 545. This type of remedial calculation has precedent in the Florida Supreme Court, *Gulesion v. Dade County School Board,* 281 So.2d 325 (Fla.1973); and was followed in *City of Tampa v. Thatcher Glass Corp.,* 445 So.2d 578 (Fla.1984). Only three individuals, it is suggested, were entitled to retroactive relief: Mr. Osterndorf, the plaintiff in *Osterndorf v. Turner;* Mr. Maguire, the plaintiff in *Maguire v. Schultz,* and Mr. Winicki, an amicus in *Osterndorf v. Turner,* one of the named Plaintiffs in this case and a plaintiff in the state action, *Winicki v. Mallard.*

*Plaintiff, Winicki's, State Action.*

Winicki instituted his state action on January 4, 1982 against Mallard, Roberts and Miller, invoking the jurisdiction of the state court pursuant to Section 194.171, *Fla. Stat.,* which provides a civil remedy for a state taxpayer who wants to contest his ad valorem tax assessment. Winicki alleged that the Statute violated his rights under the Privileges and Immunities Clause and the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. He sought monetary and injunctive relief pursuant to 42 U.S.C. § 1983.

On March 22, 1982, the circuit court in Duval County, Florida granted a stay in Winicki's action pending the final disposition of both *Osterndorf v. Turner,* 411 So.2d 330 (Fla.App.1982), Fifth District Court of Appeal, and *Maguire v. Schultz,* 426 So.2d 1303 (Fla.App.1983), Second District Court of Appeal. On July 16, 1982, nine days after Winicki commenced this federal action, the First District Court of Appeal quashed the circuit court's order granting the stay and remanded the case for a determination on the merits. *Winicki v. Mallard,* 417 So.2d 742 (Fla. 1st DCA, 1982). Upon reconsideration on the merits, the state trial court held on September 29, 1982 that the Statute violated the "right to travel and equal protection of the laws under the United States Constitution," and permanently enjoined these defendants from enforcing the Statute. No award of damages was mentioned. On May 20, 1983, more than three months after the Florida Supreme Court resolved the issue of the Statute's constitutionality in *Osterndorf v. Turner, supra,* the First District Court of Appeal, per curiam, affirmed the state trial court's order of September 29, 1982 in a one-sentence opinion which read: "Affirmed on the authority of and for the reasons enunciated in *Osterndorf v. Turner,* 426 So.2d 539 (Fla.1983)." *Winicki v. Mallard,* 436 So.2d 926 (Fla. 1st DCA 1983).

*The Instant Action*

■ Amid the flurry of state judicial activity in 1982 concerning the Statute's constitutionality, the Plaintiffs, ROBERT WINICKI and ANDREW STRAUSS, on behalf of themselves and all others similarly situated, commenced this federal action on July 7, 1982. Despite the judicial repeal of the Statute in early 1983 and the formal legislative repeal of the Statute in 1984

(Section 2 of Laws 1984, Ch. 84–327), and notwithstanding their acknowledgement that the request for injunctive relief is moot, Plaintiffs have moved the Court for a declaration as to the federal constitutional validity of the Statute and for an order granting partial summary judgment in their favor on the issue of whether they are entitled to an award of monetary damages under § 1983 against the defendant classes represented by Mallard and Roberts.

Defendants have urged two grounds for dismissal: that this action is barred by the Tax Injunction Act, 28 U.S.C. § 1341; and that this § 1983 damages action is barred by the principles of comity as enunciated in *Fair Assessment in Real Estate Assoc., Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). The latter issue will be considered first.

The concept of comity between federal courts and state governments, referred to by many as "Our Federalism", represents:

> ... a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

Nowhere is the principle of comity as particularly appropriate as in the area of state tax matters. As recognized by the United States Supreme Court less than one hundred years after our Nation's birth:

> It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.

*Dows v. City of Chicago*, 11 Wall. 108, 110, 20 L.Ed. 65 (1870).

This notion of federal court restraint with the fiscal operations of state governments barred a taxpayer civil rights damages action under Section 1983 in *Fair Assessment in Real Estate Ass'n v. McNary, supra*. *Fair Assessment* involved a suit by taxpayers in St. Louis County, Missouri alleging that the county's tax assessors, supervisors, and director of revenue, along with three state tax commissioners, had deprived them of equal protection and due process of law by unequal taxation (assessment) of real property. Plaintiffs filed suit under 42 U.S.C. § 1983 and sought actual damages in the amount of over assessment of their property as well as punitive damages against each of the public officials. As Justice Rehnquist, writing for the Court, observed:

> ... despite the ready access to federal courts provided by *Monroe* [*v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)] and its progeny, we hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court. (Footnote and citations omitted.)

*Fair Assessment* 454 U.S. at 116, 102 S.Ct. at 186.

Plaintiffs submit that comity should not bar the present action when the only issue presented is whether the state tax statute on its face violates the United States Constitution. They argue that a facial attack, unlike a challenge involving the application of a state tax statute, leaves nothing to defer to the state courts or state administrative proceedings. Thus, the policy rationale behind comity, a reluctance to interfere with state fiscal operations where the federal right may be preserved unimpaired, is simply not present. Plaintiffs point to footnote 4 of the *Fair Assessment* decision

as evidence that the issue of whether comity bars a Section 1983 action which facially attacks a state tax statute was never specifically addressed by the Court and remains an open issue.

Footnote 4 of *Fair Assessment* reads in pertinent part:

We need not decide in this case whether the comity spoken of would also bar a claim under § 1983 which requires no scrutiny whatever of state tax assessment practices, such as a facial attack on tax laws colorably claimed to be discriminatory as to race.

Whatever doors Plaintiffs assert were left open by the *Fair Assessment* Court in the above-quoted passage, this Court now closes as to these Plaintiffs in this action. No assertion has been made in this case that the Statute was racially discriminatory. It must be remembered that Section 1983, although broad in language and application, was enacted in 1871 because of the conditions that existed in the post-Civil War South. *Wilson v. Garcia,* ── U.S. ──, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). Moreover, Plaintiffs are diluting the clear message of *Fair Assessment* by such a textual reading of the footnote. The focus of whether comity bars federal court jurisdiction rests not on whether the state tax law is constitutionally challenged on its face or as applied, but rather on the concomitant respect that should be accorded state tax laws in federal court.

Upon a declaration that the Statute is facially invalid, Plaintiffs concede that a refund would have an impact on the fisc of the State of Florida. With a purported class of 300,000 individuals, a damage recovery could well exceed $150,000,000. A more chilling effect upon the fiscal operations of state government cannot be imagined.

Plaintiffs also contend that principles of comity are not applicable where, as here, Florida law cannot provide any plain, adequate and complete remedy. Except for three individuals, it is alleged that no monetary damages are available to the members of Plaintiffs' class to remedy the violation of their constitutional rights.

As the *Fair Assessment* Court noted:

We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are "plain, adequate, and complete," as that phrase has been used in articulating the doctrine of equitable restraint, and those which are "plain, speedy, and efficient," within the meaning of the Tax Injunction Act. Both phrases refer to the obvious precept that plaintiffs seeking protection of federal rights in federal courts should be remitted to their state remedies if their federal rights will not thereby be lost. Numerous federal decisions have treated the adequacy of state remedies, and it is to that body of law that federal courts should look in seeking to determine the occasions for the comity spoken of today. (Citations omitted).

*Fair Assessment,* 454 U.S. at 116, n. 8, 102 S.Ct. at 186, n. 8.

In *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Supreme Court had occasion to interpret the meaning of "plain, speedy and efficient" as it is used in the Tax Injunction Act, and concluded that a state court remedy was plain, speedy and efficient if it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Rosewell,* at 514, 101 S.Ct. at 1230 (quoting *LaSalle National Bank v. County of Cook,* 57 Ill.2d 318, 324, 312 N.E.2d 252, 255–256 (1974). The term is to be construed narrowly. *California v. Grace Brethren Church,* 457 U.S. 393, 413, 102 S.Ct. 2498, 2510, 73 L.Ed.2d 93 (1982).

A review of available state remedies demonstrates that the Plaintiffs have a choice of remedies under Florida law which are plain, adequate and complete. *See,* Ch. 194, *Fla.Stat.,* Administrative and Judicial Review of Property Taxes; Part I, Administrative Review §§ 194.011–194.042; Part II, Judicial Review §§ 194.151–194.231. Plaintiffs' allegation that their remedy is inadequate is in reality an argument that a

better remedy would be available in the federal courts. But, "[n]either the judicial decisions nor § 1341 require that the state remedy be the best available or even equal to or better than the remedy which may be available in the federal courts." *Rodriguez v. Steirheim,* 465 F.Supp. 1191, 1193 (S.D.Fla.1979), *aff'd,* 609 F.2d 1007 (5th Cir. 1980); *citing Bland v. McHann,* 463 F.2d 21, 29 (5th Cir.1972).

In the present case there is nothing to indicate that Plaintiffs have suffered or will suffer from having to seek protection of their federal rights by state remedies. In general, the fervency displayed by Winicki in pursuing this action is matched only by the malaise exhibited by all the other Plaintiffs. Indeed, Plaintiff, STRAUSS, along with the multitude of Florida homeowners who never timely judicially challenged the defunct Statute, benefited from their inaction when the Florida Supreme Court blue-penciled the durational residency requirement from the Statute for the tax year 1983. Plaintiff, WINICKI, on the other hand raised federal constitutional objections to the Statute and received a full hearing and judicial determination in the Florida courts. As an amicus in *Osterndorf,* he was credited with a refund on his 1982 ad valorem taxes, the first year he was eligible to claim his property as a homestead under Florida law. In sum, Winicki asserted his federal rights, and obtained a plain, adequate and complete remedy from which he could have secured review by the United States Supreme Court.

It is clear that Florida provides a plain, adequate and complete remedy to state taxpayers challenging state tax statutes. *Osterndorf v. Turner,* 505 F.Supp. 175, 176 (M.D.Fla.1981). While the remedial scheme contains a short sixty (60) day period for challenging the tax statute, the limitation is not unreasonable given the state's legitimate interest in sound fiscal administration.

■ The Defendants also argue that 28 U.S.C. § 1341 poses a jurisdictional bar to the present action. The Tax Injunction Act states simply that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Congress' express intent in the Act is clear: to limit drastically federal district court jurisdiction to interfere with so important a local concern as the operation of state tax systems if the taxpayer has available an adequate remedy in the state courts. Even though not prohibited by the statutory language, the Act has been held to bar federal district courts from issuing declaratory judgments holding state tax laws unconstitutional. *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).

In the aftermath of the *Osterndorf* decision in the Florida Supreme Court, Plaintiffs argue that the Tax Injunction Act issue is moot because the Statute has been enjoined, and even if the Act were to remain applicable, there is no longer any possibility that a "plain, speedy and efficient remedy" exists in the state court since approximately 300,000 Floridians have been completely denied any monetary remedy. Defendants contend the Tax Injunction Act is still applicable and presents a bar to this action.

While the applicability of Section 1341 to this action may be suspect because of the present posture of this case (the Statute having been repealed), nevertheless a declaration providing for damages pursuant to Section 1983 would be tantamount to an injunction *ab initio.* No difference is perceived in ordering Defendants to refund the collected taxes from initially enjoining or restraining the collection of the taxes when the Statute was in force. As noted above, the taxpayers had a plain, adequate and complete remedy under State law. Thus, Section 1341 would have prohibited this Court from initially enjoining the Statute's application and likewise bars a belated, identical challenge after its repeal.

The question of whether the Tax Injunction Act standing alone would bar consideration of a taxpayer damage action brought under Section 1983 was left unresolved by

the United States Supreme Court in *Fair Assessment*. *Fair Assessment* 454 U.S. at 107, 102 S.Ct. at 181. That is not to say, however, that this Court is writing on a clean slate. There is precedent in this circuit that taxpayers may not circumvent the jurisdictional bar of § 1341 by bringing a civil rights action under § 1983. *Bland v. McHann*, 463 F.2d 21 (5th Cir.1972); *cert. denied* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). In *Bland* a § 1983 action was filed by black taxpayers charging that increases in their property tax assessments were solely the result of racial discrimination and were in retaliation for peaceful protests against local merchants and municipal officials. The court held that in the clash between the two statutes, § 1341 should prevail. *See also, American Commuters Association v. Levitt*, 405 F.2d 1148 (2d Cir.1969); *Gray v. Morgan*, 371 F.2d 172 (7th Cir.1966).

Accordingly, based on the principles of comity as expressed in *Fair Assessment, supra,* and on 28 U.S.C. § 1341, this cause shall be dismissed.

IT IS ORDERED AND ADJUDGED:

That Defendants' motion to dismiss be and the same is hereby GRANTED, and this cause stands dismissed.