Robert John WINICKI, and Andrew Alexander Strauss, Plaintiffs-Appellants,

v.

Robert A. MALLARD, et al., Defendants-Appellees.

No. 85–3692.

United States Court of Appeals, Eleventh Circuit.

March 13, 1986.

G. MacKenzie Rast, Jacksonville, Fla., for plaintiffs-appellants.

Linda Logan Bryan, Office of Gen. Counsel, Jacksonville, Fla., for Roberts & Mallard.

Jim Smith, Atty. Gen., Barbara Staros Harmon, Tallahassee, Fla., for Miller & Smith.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Appellants, two Florida taxpayers, on behalf of themselves and all others similarly situated, sued various state and county officials, both individually and in their official capacities, including the property and tax collectors of Florida's sixty-seven counties, the Executive Director of the Department of Revenue, and the Attorney General, alleging violation of their federal constitutional rights by the enactment of Florida Statute Section 196.031(3)(d)–(e) (1981), the homestead tax exemption statute, and sought redress pursuant to 42 U.S.C. Section 1983. The district court, 615 F.Supp. 1244 (1985), dismissed the action based on the principle of comity as expressed in *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) and on the Tax Injunction Act, 28 U.S.C. Section 1341. We affirm.

The homestead exemption statute provided for an enhanced property tax exemption for homeowners who had been permanent residents of the State of Florida for five consecutive years prior to claiming an exemption. The taxpayers alleged that such a requirement impaired the fundamental right to travel from one state to Florida and created two classes of residents in Florida, those who had been residents for five consecutive years and those who had not. They also alleged that it discriminated against older individuals who, because of their age, have a shorter expected life span and who move into the State of Florida for retirement. It was also contended that the requirement restricted the movement of goods and persons among the states.

Originally, the taxpayers sought a declaratory judgment that the statute was in violation of the United States Constitution, an injunction prohibiting the enforcement of the five-year residence requirement, and damages to the class due to application of the requirement which would result in discriminatory taxation. At the time of dismissal of their complaint, the taxpayers had limited their prayer for relief to only a declaration of the statute's invalidity under the Federal Constitution and an award of damages under Section 1983. An injunction was no longer needed because in the interim the Florida Supreme Court had ruled that Section 196.031(3)(e) violated the equal protection clause of the Florida Constitution. *See Osterndorf v. Turner*, 426 So.2d 539 (Fla.1982). On rehearing, Section 196.031(3)(d) was also found to be unconstitutional. The Florida legislature formally repealed the statute in 1984 (Section 2 of Laws 1984, Ch. 84–327).

Appellants continue to seek Section 1983 relief because they claim that there is no state remedy available for the refund of several hundred million dollars collected under the statute before it was declared unconstitutional and collections were suspended. They emphasize that the *Osterndorf* decision was prospective only for the taxable year commencing January 1, 1983,

and that it permitted only those taxpayers who had timely judicially challenged the applicability of this residence requirement in state court to be entitled to refunds. Appellants contend that this limitation denies access to an effective state remedy for the balance of the taxpayers.

Disposition of this controversy requires examination of two lines of authority which are somewhat dichotomous and which lead to different results. The first is represented by the principle of comity, and the second is represented by various decisions which have interpreted the scope of 42 U.S.C. Section 1983 (The Civil Rights Act of 1871).

The principle of comity has been described as "something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question." *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488, 20 S.Ct. 708, 710, 44 L.Ed. 856 (1900). For more than a century a series of decisions has injected a particular vitality into the principle of comity where operations of state tax systems have been challenged in federal courts. In *Dows v. Chicago*, 11 Wall. 108, 78 U.S. 108, 20 L.Ed. 65 (1871), Mr. Justice Field noted that "it is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id.* at 110, 78 U.S. at 110. In 1909 the Court concluded that "an examination of the decisions of this court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Boise Artesian Water Co. v. Boise City*, 213 U.S. 276, 282, 29 S.Ct. 426, 428, 53 L.Ed. 796 (1909). The

center of controversy continued to revolve around this "interference by prevention." In 1932 the Supreme Court was confronted with an appeal by Mississippi officials from the decree of a federal district court enjoining the collection of a state tax as an unconstitutional burden on interstate commerce. *Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932). Writing for the court, Mr. Justice Stone cited Section 16 of the Judiciary Act of 1789 (later Rev.Stat. 723, 28 U.S.C. Section 384, Jud. Code Section 267), which declared that suits in equity should not be heard in federal courts in any case where there was a plain, adequate and complete remedy at law. *Id.* at 525, 52 S.Ct. at 219. "Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States." *Id.* at 525–26, 52 S.Ct. at 219–20.

The principle of comity was not weakened or altered in 1937 by passage of 28 U.S.C. Section 1341, The Tax Injunction Act. The Act provides that:

(t)he district courts shall not enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The principal of comity was recognized to be so critical to effective operation of state taxing systems that Section 1341 served to strengthen this principle by formal, legislative sanction. "(T)he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976).

Neither the legislative history of Section 1341, nor its predecessor, 28 U.S.C. Section 1342, indicate that Congress intended to limit the scope of federal court restraint in state tax matters to the actions specified in

those sections. *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 110, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981). In *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), the Court clearly did not restrict the principle of comity to the actions enumerated in Section 1341. In *Great Lakes,* several Louisiana taxpayers sought a declaratory judgment in federal district court that a state tax law as it applied to them was unconstitutional and void. At that time the Court found it unnecessary to determine whether or not the Act should be construed to prohibit a declaration by federal courts concerning the unconstitutionality of a state tax law. "(W)e are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." *Id.* at 299, 63 S.Ct. at 1073. It has recently been held that the Act also encompasses judicial restraint in granting declaratory relief. *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982). Thus, a narrow reading of the language of the Act serves merely as a partial embodiment of the broader notion of comity.

Against this setting, a second, and no less important, area is presented by 42 U.S.C. Section 1983 and decisions such as *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which have interpreted its application. Section 1983 was enacted in the post-Civil War era to ensure state compliance with federal constitutional rights. It offers a federal cause of action to those able to prove violations of federal rights by anyone acting under color of state or local authority and makes the offending party "liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." It has been held that it is not necessary to exhaust state remedies before resort to Section 1983 and the federal forum, thus making the federal remedy supplementary, not

subservient to those of the state. *Monroe, supra,* at 183, 81 S.Ct. at 482; *see also Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963).

■ It is immediately apparent that these two lines of authority mandate different results in the state taxation context where a "plain, speedy and efficient" state remedy is available to vindicate violations of federal rights. The Supreme Court confronted this incompatibility head on in *Fair Assessment in Real Estate v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). After noting that Section 1341 and the comity cases have precluded federal courts from granting injunctive and declaratory relief in state tax cases, the Court held "that taxpayers are barred by the principle of comity from asserting Section 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court." *Id.* at 116, 102 S.Ct. at 186. By so holding, the Court resolved a conflict among the Courts of Appeals as to the proper relation between these two divergent doctrines. *See id.* at 102 n. 2, 102 S.Ct. at 179 n. 2. Thus, where a Section 1983 action is grounded in an allegation of an unconstitutional tax scheme, to survive dismissal the plaintiff must demonstrate that there is no plain, adequate, and complete state remedy available. The initial burden, then, is upon the plaintiff to make such a showing. Unless he is able to do so, the federal courts may properly refuse to entertain his Section 1983 action.

The district court in the instant case noted that "a review of available state remedies demonstrates that the plaintiffs have a choice of remedies under Florida law which are plain, adequate and complete." Moreover, the court observed that the vindica-

tion of the rights of those who timely judicially challenged the discriminatory statute in state court was proof that they had received a full hearing and judicial determination in the Florida courts. Appellants contend, however, that the prospective ruling in *Osterndorf* effectively denies any remedy at all to those taxpayers who did not timely judicially file in state court unless the federal courts will open their doors as they are required to do under Section 1983. The question arises then why didn't the taxpayers bring a class action in state court.

■ Appellants' response is that they would have been required to file at least sixty-seven class action suits in sixty-seven counties to get relief, and that this would not have afforded them a plain, adequate and complete remedy. In view of the several hundred thousand members of the class and several hundred million dollars in question, we cannot agree with appellants that such a requirement effectively precluded them from enjoying a full hearing and judicial determination in the Florida courts. Appellants' position speaks not to the lack of such a remedy in state court but rather to the taxpayers' own cost-benefit analysis of the state remedy available at that time.

■ Appellants attempt to distinguish *Fair Assessment* by asserting that the comity doctrine only applies to situations where current operations of state tax systems are being challenged. Here, the tax operations in question have already been both judicially and legislatively repealed. Appellants maintain that a federal court need not concern itself with interfering in a state tax scheme which no longer exists and, therefore, is not to be bound by the restraint embodied in the principle of comity. The comity doctrine as enunciated in *Fair Assessment* should not be so narrowly read. "(D)amages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a Section 1983 claim. We consider such interference to be contrary to 'the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.'" *Fair Assessment* at 115–16, 102 S.Ct. at 185–86 (citing *Matthews v. Rodgers*, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932)). The damages sought here are a refund of taxes collected under a state statute prior to its invalidation. Even though a state statute has been declared unconstitutional and is no longer operational, the principles of federalism upon which the comity doctrine rests require federal courts to show restraint where retroactive relief is being sought.[1]

The district court appropriately refused to engage in a post hoc evaluation of Florida's resolution of the controversial tax statute, recognizing that the proper relation of the federal forum to that of the state in this most critical area of state operations is governed by the principle of comity.[2]

AFFIRMED.

---

1. In *Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973), the Supreme Court denied taxpayers' request for retroactive relief and permitted the state of Pennsylvania to keep and disburse to third parties taxes collected under a statute which was subsequently declared to violate the Establishment Clause of the First Amendment. The Court has also refused retrospective relief where municipal financing was based on unconstitutional electoral procedures, *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969), and where local officials were elected under possibly discriminatory voting laws, *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

2. In view of our disposition of this case we need not reach the applicability vel non of the Tax Injunction Act.