[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13159

_____

ROBERT R. TURNER,

Plaintiff-Appellant,

*versus*

SHARON W. JORDAN,
TIEYONE MITCHELL,
BARRY A. BAKER,
TRACY K. BALDWIN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cv-00303-TJC-MCR

_____

Before ROSENBAUM, NEWSOM, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Florida, like most states, allows property owners to claim a homestead exemption on their permanent residences. And, like most states, Florida permits counties to sell properties to collect past due property taxes. That's what happened to Robert Turner in Suwannee County. Just one small hitch: Turner claimed that the County sold his homestead property at an impermissibly low amount under Florida law.[1] Had the property been sold at the required amount for qualifying homesteads, Turner would have received any surplus after his back taxes and required costs were deducted.

After unsuccessful attempts in state and federal court for relief, Turner filed the instant pro se complaint.[2] Among other

---

[1] Turner's complaint named four defendants: (1) Suwannee County Tax Collector, Sharon W. Jordan; (2) Suwannee County Tax Collector employee, Tieyone S. Mitchell; (3) Suwannee County Circuit Court Clerk, Barry A. Baker; and (4) Suwannee County Circuit Court Deputy Clerk, Tracy K. Baldwin. Later, he also named Suwannee County. We refer to these defendants collectively as the County.

[2] As explained below, Turner's second amended complaint is the operative complaint.

things, Turner asserted that the sale was an unlawful taking of the sale's potential surplus. The County moved to dismiss, and the District Court found dismissal warranted based on comity. We must now decide whether the District Court abused its discretion by doing so.

After careful review, and with the benefit of oral argument, we affirm. The relief Turner seeks risks disrupting Florida's administration of its ad valorem property tax scheme, and plain, adequate, and complete state remedies were available. Dismissal under the comity doctrine was warranted.

Our opinion proceeds in four parts. First, we explain the statutory, factual, and procedural background. Second, we lay out the applicable standards of review. Third, we discuss why the District Court did not abuse its discretion by abstaining from exercising its jurisdiction under the comity doctrine. Last, we briefly conclude.

## I.  Background

For context, we first explain Florida's ad valorem property tax scheme. We then detail the factual and procedural background of Turner's case.

### A.  Florida's Ad Valorem Property Tax Scheme

In Florida, "[p]roperty taxes are collected on all non-exempt properties . . . as a means of funding counties, school boards, and local governments." *Nikolits v. Haney*, 221 So. 3d 725, 728 (Fla. Dist.

Ct. App. 2017).  Florida property taxes are due annually by April 1. Fla. Stat. § 197.122(1) (2024).

### 1.  Tax Deed Sales for Unpaid Property Taxes

If property taxes are unpaid, "the tax collector shall commence the sale of tax certificates."  *Id.* § 197.432(1).  And "[e]ach certificate shall be awarded to the person who will pay the taxes, interest, costs, and charges and will demand the lowest rate of interest."  *Id.* § 197.432(6).  The sale of a tax certificate creates a lien on the property.  *Id.* § 197.432(2).

If the tax certificate remains unpaid after two years from the date the taxes became delinquent, the certificate holder "may file the certificate and an application for a tax deed with the tax collector" to force a tax deed sale.[3]  *See id.* § 197.502(1).  A tax deed sale, like the name suggests, is where a deed "is issued to the highest bidder on property sold at a public auction because of nonpayment of ad valorem taxes."  *Vosilla v. Rosado*, 944 So. 2d 289, 292 (Fla. 2006); Fla. Stat. § 197.542(1)–(2).  When an application for a tax deed has been made, "[t]he tax collector shall deliver to the clerk of the circuit court a statement that . . . [certain] persons are to be notified prior to the sale of the property."  Fla. Stat. § 197.502(4).

---

[3] Florida courts have referred to a tax deed sale as "a foreclosure by tax deed proceeding."  *See Priest v. Plus Three, Inc.*, 447 So. 2d 338, 339 (Fla. Dist. Ct. App. 1984).  We use "tax deed sale" because that's how the statutes and recent Florida court cases refer to these sales.  *See, e.g.*, Fla. Stat. § 197.512(1) (2001); *Vosilla v. Rosado*, 944 So. 2d 289, 291 (Fla. 2006).

Those persons include:

> Any legal titleholder of record if the address of the owner appears on the record of conveyance of the property to the owner. However, if the legal titleholder of record is the same as the person to whom the property was assessed on the tax roll for the year in which the property was last assessed, the notice may be mailed to the address of the legal titleholder as it appears on the latest assessment roll.

*Id.* § 197.502(4)(a).[4] And "[f]or purposes of determining who must be noticed[,] . . . the tax collector must contract with a title company or an abstract company to provide a property information report." *Id.* § 197.502(5)(a).

After the clerk of the circuit court receives the property information report, the clerk "shall notify [the legal titleholder], by certified mail with return receipt requested . . . . at least 20 days prior to the date of sale." *Id.* § 197.522(1)(a).[5] "If no address is listed in the tax collector's statement, then no notice shall be required."

---

[4] Subject to conditions, the tax collector must also notify any: (1) lienholder of record who has a recorded lien against the property, (2) mortgagee of record, (3) vendee of a recorded contract for deed, (4) lienholder who has applied to the tax collector to receive notice, (5) person to whom the property was most-recently assessed on the tax roll, (6) lienholder of record who has a recorded lien against a mobile home located on the property, and (7) legal titleholder of record of property contiguous to the property. Fla. Stat. § 197.502(4)(b)–(h).

[5] The notice must inform the owner (1) that there are unpaid taxes, (2) the date of the public auction, and (3) the clerk of court's contact information to make a payment or for further information. Fla. Stat. § 197.522(1)(b).

*Id.* The clerk also must "publish a notice once each week for 4 consecutive weeks . . . in a newspaper," and "[n]o tax deed sale shall be held until 30 days after the first publication of the notice." *Id.* § 197.512(1).[6]

"The failure of anyone to receive notice . . . shall not affect the validity of the tax deed issued pursuant to the notice." *Id.* § 197.522(1)(d). And both forms of notice are "deemed conclusively sufficient to provide adequate notice of the tax deed application and the sale at public auction." *Id.* § 197.502(5)(e).

Should the public auction flop, like it did here, "the clerk shall enter the land on a list entitled 'lands available for taxes.'" *Id.* § 197.502(7). During the first ninety days after the property is listed, the county may buy the property for the opening bid or waive its right to do so. *Id.* After that period, anyone may buy the property from the clerk. *Id.*

---

[6] If no newspaper is available, "the clerk shall execute and file in his or her office a certificate of the posting of the notices, stating where and on what dates the notices were posted." *Id.* § 197.512(2).

Under either sale method, the statutes dictate the "opening bid" amounts. *See id.* § 197.502(6). For individually held certificates, the opening bid

> must include, in addition to the amount of money paid to the tax collector by the certificateholder at the time of application, the amount required to redeem the applicant's tax certificate and all other costs, fees paid by the applicant, and any additional fees or costs incurred by the clerk, plus all tax certificates that were sold subsequent to the filing of the tax deed application, current taxes, if due, and omitted taxes, if any.

*Id.* § 197.502(6)(b). Also pertinent is the statutes' required opening bid for homestead properties. The opening bid "[o]n property assessed on the latest tax roll as homestead property shall include, in addition to the amount of money required for an opening bid on nonhomestead property, *an amount equal to one-half of the latest assessed value of the homestead.*" *Id.* § 197.502(6)(c) (emphasis added); *id.* § 197.542(1).

Funds collected from the tax sale are used to pay off the amount owed to the certificate holder and other costs incurred in the sale. *See id.* § 197.582(1). If the sale creates a surplus, "the clerk shall [first] distribute the surplus to . . . governmental units" to pay off any other liens and omitted taxes. *Id.* § 197.582(2)(a). Any remaining surplus "must be retained by the clerk for the benefit of" the property owner. *Id.*; *id.* § 197.522(1)(a).

### 2. Administration

Florida's ad valorem property tax scheme is managed at the county level by property appraisers, tax collectors, and clerks of the circuit courts. *See* Fla. Const. art. VIII, § 1(d). Each office has its own role in administering the property tax scheme. *See id.* A property appraiser assesses property value, adjusts those values by approving or rejecting exemptions, and certifies this information on the official tax roll. *See* Fla. Stat. §§ 193 *et seq.* A tax collector collects and distributes taxes shown on the tax roll, approves deferrals, and as noted above, sells tax certificates. *See id.* §§ 197 *et seq.* The clerk of the circuit court advertises and conducts tax deed sales, including sending the required notices and distributing any surplus from the sale. *See id.* §§ 197.522, 197.582.

### 3. Homestead Exemptions

One type of exemption property appraisers administer is the homestead exemption. *See id.* § 193.155(8)(*l*); Fla. Const. art. X, § 4. A property owner is entitled to a homestead exemption if, "on January 1, [he or she] has the legal title . . . [and] in good faith makes the property his or her permanent residence or the permanent residence of" his or her legal dependents. Fla. Stat. § 196.031(1)(a).

i. Application Process

To claim a homestead exemption, qualifying property owners must, "on or before March 1 of each year, file an application for exemption with the county property appraiser." *Id.* § 196.011(1)(a). After an original homestead exemption is granted, the property appraiser "shall mail a renewal application to the applicant," which

generally "shall be accepted as evidence of exemption" once returned. *Id.* § 196.011(7)(a). But the property appraiser retains discretion to deny the exemption. *Id.*

Counties, at the request of a property appraiser, may elect to waive the annual application requirement "after an initial application is made and the exemption granted." *Id.* § 196.011(10)(a). This automatic renewal process "shifts to the property owner the burden of notifying the property appraiser proactively of any changes that may affect the exempt status of the property, subject to penalties for failure to do so." *Crapo v. Acad. for Five Element Acupuncture, Inc.*, 278 So. 3d 113, 123 (Fla. Dist. Ct. App. 2019) (en banc) (per curiam). When a county authorizes the automatic renewal process, property owners receive a postcard that only requires a response if they no longer qualify for the exemption. *See* Fla. Admin. Code Ann. r. 12D-16.002 (2024) (listing form DR-500AR).

ii. Denials and Challenges

Even under the automatic renewal process, a homestead exemption is not final until the property appraiser is satisfied "that all property is properly taxed" and completes the tax roll certification. *See* Fla. Stat. § 193.122(2). The automatic exemption will be removed if, before that time: (1) the owner returns the receipt acknowledging non-entitlement, or (2) "the property appraiser

determines that [the] property claimed as . . . exempt . . . is not entitled to any exemption." *Id.* § 196.193(5)(a); *see also id.* § 196.151.[7]

Florida's constitution requires a "Taxpayer's Bill of Rights" that "guarantee[s] that the rights, privacy, and property of [Florida] taxpayers . . . are adequately safeguarded and protected during tax levy, assessment, collection, and enforcement processes." *Id.* § 192.0105; *see* Fla. Const. art. I, § 25. Florida's Taxpayer's Bill of Rights,[8] and the associated statutes, include protections and processes for homestead exemption denials and challenges for all matters related to property taxation—like voiding tax deed sales in the circuit courts. *See* Fla. Stat. § 194.171(1); Fla. Admin. Code Ann. r. 12D-13.066(1) (2016).

For example, if the property appraiser denies a homestead exemption, the property owner may appeal to the local value adjustment board. Fla. Stat. § 196.151; *see also id.* § 194.011(3)(d). The board "shall review the application and evidence presented to the property appraiser . . . and shall hear the applicant in person or by agent." *Id.* § 196.151. And the board "shall reverse . . . or shall affirm the decision of the property appraiser." *Id.* The board's

---

[7] Property appraisers must physically inspect properties every five years to ensure the tax roll is accurate. Fla. Stat. § 193.023(2). A property appraiser's decision to grant or remove an exemption is subject to the appraiser's "sound discretion" that the "property either factually qualifies or factually does not qualify for the exemption." Fla. Admin. Code Ann. r. 12D-8.021(d) (2006).

[8] Broadly speaking, Florida's Taxpayer's Bill of Rights guarantees taxpayers: (1) the right to know, (2) the right to due process, (3) the right to redress, and (4) the right to confidentiality. Fla. Stat. § 192.0105.

decision is final unless, "within 15 days" of the board's decision, the property owner seeks a declaratory judgment "in the circuit court of the county" where the property is situated. *Id.*; *see also* §§ 194.036(2), 192.0105(2)(i). But property owners must do so within "60 days from the date the assessment being contested is certified . . . or [within] 60 days from the date a decision is rendered . . . by the value adjustment board." *Id.* § 194.171(2). This time limit is jurisdictional. *See Ward v. Brown*, 894 So. 2d 811, 813 (Fla. 2004) (per curiam).

### B. *Factual and Procedural Background*

With that basic understanding of Florida's ad valorem property tax scheme, we now turn to (1) how Turner's property was sold, (2) Turner's prior cases in state and federal court, and (3) his current complaint.

### 1. Turner's Property is Sold

In 1995, Turner received a homestead exemption on his real property in Suwannee County. That homestead exemption renewed automatically for years. But all that changed in 2015. Before we get to that, a few crucial details.

After Turner failed to pay his property taxes, the tax collector's office issued a tax certificate on May 28, 2010.[9] Two years passed and Turner failed to pay the certificate. That's when the certificate holder demanded a tax deed sale. Around that time,

---

[9] The tax collector's office also issued tax certificates in 2011, 2012, and 2013.

22-13159                Opinion of the Court                12

Turner protested Suwannee County's agricultural policies. He posted a sign on his vehicle calling for the firing of Suwannee County's property appraiser, Lamar Jenkins.

In response to the certificate holder's demand, the clerk of court advertised and conducted a public auction of Turner's property on March 5, 2015. At that time, Turner's property still had a valid homestead exemption and an assessed value of $30,595. No bidders were at the auction. Because there were no bidders, the clerk put Turner's property up for public sale on Suwannee County's "List of Lands Available for Taxes."

While Turner's property was on the list, the Suwannee County property appraiser determined that the property was not Turner's permanent residence.[10] And the property appraiser allegedly sent Turner written notification to that effect. When the tax roll was certified on October 7, 2015, Turner's property was no

---

[10] The notice of removal of Turner's homestead exemption was not presented to the District Court; it was filed in Turner's prior state court case. We take judicial notice of this document only to assess whether the District Court abused its discretion in abstaining from exercising its jurisdiction. *Cf. Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991) ("In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction."); *Irving v. Breazeale*, 400 F.2d 231, 236 (5th Cir. 1968) (taking judicial notice of a state law when deciding whether comity might be appropriate); *Lumen Constr., Inc. v. Brant Constr. Co.,* 780 F.2d 691, 697 n.4 (7th Cir. 1985) (explaining that when considering abstention, "it is appropriate for the reviewing court to look at the total situation as it stands at the time of appeal; we need not restrict ourselves to the materials before the district court").

longer subject to the homestead exemption.  Seven days later, the clerk of court foreclosed on Turner's property via a tax deed sale for $3,540.45.  Turner never received mailed notice of the sale, despite updating his address with the Suwannee County tax collector.

## 2.  Prior Proceedings

That's when Turner, proceeding pro se, turned to the state courts for relief.[11]  In April 2017, he filed a "Petition for Suit of Equity Homestead Removal."  *See Turner v. Jenkins*, No. 2017-CA-68 (Fla. Cir. Ct. 2017).  In that action, Turner challenged the appraiser's removal of his homestead exemption.  The state court dismissed his complaint because it found that Turner's claim was untimely under Florida law.  In February 2018, Turner appealed to Florida's First District Court of Appeal.  And in July 2018, the First District Court of Appeal dismissed Turner's appeal as untimely.  *See Turner v. Jenkins*, 250 So. 3d 10 (Fla. Dist. Ct. App. 2018) (per curiam).

Turner continued his homestead exemption challenge in federal court.  *See Turner v. Baldwin*, No. 3:18-CV-1275-J-PDB, 2019 WL 5423389, at *1 (M.D. Fla. Oct. 23, 2019).  There he filed a § 1983 action against Tracy Baldwin, a deputy clerk for the

---

[11] We also take judicial notice of Turner's previous state and federal cases "for the limited purpose of recognizing the 'judicial act[s]' that the order[s] represent[ and] the subject matter of the litigation."  *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *cf. FDIC v. N. Savannah Props., LLC*, 686 F.3d 1254, 1257 n.1 (11th Cir. 2012) ("[W]e can take judicial notice of the documents that were filed in the state court proceeding.").

Suwannee County Clerk of Court, and Lamar Jenkins. *Id.* The Magistrate Judge construed Turner's complaint to assert that Baldwin and Jenkins violated his procedural due process rights under the Fourteenth Amendment. *Id.* at *3. Baldwin and Jenkins moved to dismiss Turner's complaint for lack of subject matter jurisdiction. *Id.* at *1. The Magistrate Judge agreed with Baldwin and Jenkins, and dismissed Turner's complaint without prejudice because she found that abstention was warranted under the comity doctrine.[12] *Id.* at *5. After Turner unsuccessfully moved for reconsideration, he appealed to our Court to challenge the Magistrate Judge's decision not to reconsider. *See Turner v. Baldwin*, 833 F. App'x 330, 331 (11th Cir. 2021) (per curiam). We affirmed and reasoned that Turner failed to "raise any argument as to why the denial of his motion was improper." *Id.* at 332.

### 3. Turner's Current Case

A few months later, again proceeding pro se, Turner filed this case. After Turner filed an amended complaint at the direction of the Magistrate Judge, the County moved to dismiss. The District Court referred the County's motion to the Magistrate Judge for a report and recommendation ("R&R"). The Magistrate Judge recommended that Turner's amended complaint be dismissed as a shotgun pleading. The Magistrate Judge also recommended that

---

[12] The parties consented to the Magistrate Judge's jurisdiction under 28 U.S.C. § 636(c).

the County's motion be denied because the record could not answer whether the Tax Injunction Act or comity doctrine applied.

Before the District Court could act on the R&R, Turner filed a second amended complaint. The District Court adopted the R&R, construed Turner's second amended complaint as a motion for leave to amend, and granted Turner's motion—thereby making the second amended complaint the operative complaint.

The crux of Turner's second amended complaint is that his property should have been sold for one-half of the assessed value because at the time of the opening bid his property still had a homestead exemption. Had it been sold for that amount, Turner would have received any residual after his back taxes were deducted. More specifically, Turner's second amended complaint stated four counts:

- Count I alleged a § 1983 First Amendment retaliation claim for "exercise of . . . protected free speech, expression [of] rights, peaceful protest[,] and for redress of grievance."

- Count II alleged a § 1983 Fourth Amendment claim for the "illegal seizure of [Turner's] homesteaded property again[s]t all defendants."

- Count III alleged a "state tort claim of conspiracy, concealment, explo[it]ation, misrepre[se]ntation, ne[g]ligence, omissions[,] and fraud and for the creation of a state-danger against all defendants."

22-13159                Opinion of the Court                16

- Count IV alleged a § 1983 claim against Suwannee County "for reckless indifference to [Turner's] clearly established const[it]utional rights."

The County again moved to dismiss. It argued that the District Court lacked jurisdiction under the Tax Injunction Act.[13] Alternatively, the County argued that the comity doctrine required that the District Court abstain from exercising its jurisdiction.[14]

The District Court granted the County's motion. The District Court declined to consider whether the Tax Injunction Act applied because it concluded that the comity doctrine warranted abstention. It reasoned that Turner was asking the District Court to rule on the propriety of the homestead exemption removal, the sufficiency of the notice of the tax sale, and the failure of County Tax Collector employees to consider the homestead status of his property. But to rule on those issues would require the District Court to "rule on the constitutionality of Suwannee County's tax

---

[13] Under the Tax Injunction Act, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "The limitation imposed by the act is *jurisdictional*; it embodies the general principle that the jurisdiction of the federal courts to 'interfere with so important a local concern as the collection of taxes' must be drastically limited." *Colonial Pipeline*, 921 F.2d at 1242 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981)).

[14] Although the District Court did not reach the issue, the County also argued that Turner's state-law claims should be dismissed because the statute of limitations had run. The County did not argue that Turner's federal claims were barred by the statute of limitations. *See infra* note 15.

procedures." Turner timely appealed, and we appointed counsel to assist him.

## II. Legal Standards

"While we ordinarily review the grant of motions to dismiss . . . *de novo*, 'a district court's decision to abstain will only be reversed upon a showing of abuse of discretion.'" *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (citation omitted). "A district court abuses its discretion if it misapplies the law or makes findings of fact that are clearly erroneous." *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1328 (11th Cir. 2015).

## III. Discussion

Turner challenges the District Court's dismissal of his complaint on comity grounds. He argues that the resolution of his claims would not disrupt Florida's tax scheme. Instead, he seeks to enforce Florida and federal law to prevent government officials from violating his constitutional rights. And he contends that Florida state courts do not provide a "plain, speedy, and efficient remedy."

The County urges us to affirm the District Court's judgment. It contends that Turner's case is functionally identical to his previous cases. It adds that the relief Turner seeks would require ruling on the propriety of the removal of his homestead exemption and the sufficiency of the notice of the sale. Those rulings, according to the County, would require the District Court to opine on the constitutionality of Florida's taxation scheme. The County also

explains that Florida state courts provide adequate remedies for Turner's complaints.[15]

We agree with the County that the District Court's judgment should be affirmed. "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (omission in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). But the Supreme Court has "long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *Nat'l Priv. Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 586 (1995). Squeezed down, "the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010).

This restraint creates tension for plaintiffs, like Turner, who raise constitutional claims via § 1983. "Such claims are entitled to be adjudicated in the federal courts." *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 674 (1963). And § 1983 plaintiffs may "immediate[ly] resort to a federal court whenever state actions allegedly infringe[] constitutional rights." *Fair Assessment in*

---

[15] The County also argues that Turner's § 1983 claims are barred by Florida's four-year statute of limitations. This argument was not raised before the District Court, so it is not properly before us. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

*Real Est. Ass'n v. McNary*, 454 U.S. 100, 104 (1981). Still, "despite the ready access to federal courts" to resolve § 1983 claims, "taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete." *Id*. at 116.

Admittedly a close call, Turner's case fits this standard. The relief he seeks (1) risks disrupting Florida's administration of its ad valorem property tax scheme, and (2) the Florida state courts provide plain, adequate, and complete remedies. Let us explain.

### A. Risk of Disruption

We have not considered a case like Turner's. But both the Supreme Court and our Court have confirmed that the comity doctrine is to be construed broadly in state taxation cases. *See Levin*, 560 U.S. at 424–25; *Winicki v. Mallard*, 783 F.2d 1567, 1571 (11th Cir. 1986). The Supreme Court has outlined a non-exclusive "confluence of [three] factors," to determine whether resolution of a plaintiff's suit would risk disruption such "that comity precludes the exercise of original federal-court jurisdiction." *Levin*, 560 U.S. at 426, 431.

First, comity is disfavored when the plaintiff's suit "involve[s] any fundamental right or classification that attracts heightened judicial scrutiny." *See id*. at 431. But when the plaintiff's suit seeks "federal-court review of commercial matters over which [the state] enjoys wide regulatory latitude," then this factor favors abstaining under the comity doctrine. *See id*.

Second, that a plaintiff is a third-party challenger to an allegedly unconstitutional tax scheme weighs against invoking the comity doctrine. *See id.* at 430–31. Yet when the plaintiff seeks to "improve their competitive position," that favors comity. *See id.* at 431.

The last factor asks whether the state courts are better positioned than the federal courts to correct any violation raised by the plaintiff. *Id.* at 431–32. When the federal and state courts are equally positioned to grant relief, this factor disfavors dispatching the case on comity grounds. *See id.* On the other hand, when the state courts are better positioned, this factor supports dismissal under the comity doctrine. *See id.*

No individual factor may "compel forbearance on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process." *Id.* at 432. With that, we pull out the scales and weigh these factors.

### 1. Commercial Matters or Fundamental Rights

As to the first factor, Turner's suit falls in the fundamental rights bucket. Looking beyond the labels in his complaint, and liberally construing his claims, *see Means v. Alabama*, 209 F.3d 1241, 1242 (11th Cir. 2000) (per curiam); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam), Turner alleges several constitutional claims that implicate fundamental rights like freedom of political expression, procedural due process, and a taking without just compensation. This factor weighs against invoking the comity doctrine. *See Hibbs v. Winn*, 542 U.S. 88, 93, 107 n.9

22-13159               Opinion of the Court                21

(2004) (conveying that an Establishment Clause–grounded case cleared the comity hurdle).

### 2. Third-party or Personal Tax Situation Challenger

The second factor is trickier, but it leans in favor of comity. Turner is not a third-party challenger. He is "in no sense [an] 'outsider[]' to the revenue-raising state-tax regime [he] ask[s] the federal courts to restrain." *Levin*, 560 U.S. at 435 (Thomas, J., concurring). That much is clear. Whether he "seek[s] federal-court aid in an endeavor to improve [his] competitive position" is less straightforward. *Id.* at 431 (majority opinion). Answering that question requires contextualization because, unlike the plaintiff in *Levin*, Turner is not a business concerned with his "competitive position." *Cf. Illinois v. Lidster*, 540 U.S. 419, 424 (2004) (looking to an opinion's "language, as well as its context"); *United States v. Dinneen*, 577 F.2d 919, 921 (5th Cir. 1978) (stating that a court "interpreted selective portions of [another case] out of context").[16]

---

[16] Were we to read the second factor literally, it would likely never apply to individual taxpayer plaintiffs like Turner. Plaintiffs in Turner's shoes generally are not seeking to improve their "competitive positions." We do not read judicial opinions with pedantic literalism; meaning and interpretation is determined by context. It would be "a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Servs. v. Craddieth*, 442 F.3d 1018, 1026 (7th Cir. 2006) (Posner, J.).

In describing this factor, as with the other two, the Supreme Court compared Levin's case to its previous *Hibbs* opinion.  It explained that

> [t]he plaintiffs in *Hibbs* were outsiders to the tax expenditure, "third parties" whose own tax liability was not a relevant factor.  In this case, by contrast, the very premise of respondents' suit is that they are taxed differently from [local distribution companies].  Unlike the *Hibbs* plaintiffs, respondents *do object to their own tax situation*, measured by the allegedly more favorable treatment accorded [local distribution companies].

*Levin*, 560 U.S. at 430 (emphasis added).  So—in context—the heart of the second factor is whether the plaintiff objects to his or her own tax situation.

With that polish, the picture becomes clearer.  True, Turner is adamant that he does not contest his tax liability or the County's right to sell his property via a tax deed sale.  But he does object to his own tax situation "in a very real and economically significant way."  *Id.* at 435 (Thomas, J., concurring).  He objects to the way his taxes were collected, both the lack of notice he received and how the County calculated the opening bid for the tax deed sale it used to satisfy his tax liability.  This factor therefore favors comity.

### 3.  Better Positioned State Courts

That brings us to the final factor: whether the Florida courts are better positioned than the federal courts to correct the violations Turner alleges.  State courts are better positioned when the

correction sought requires greater familiarity with state legislative preferences and when the federal courts' remedial options would be constrained by the Tax Injunction Act. *See id.* at 431–32 (majority opinion).  In our view, those conditions are present.  Here's why.

For Turner to prevail on his due process claims it would require a conclusion that the County failed to provide sufficient notice of the sale process under Florida Statutes sections 197.502(4)(a), 197.522, and potentially 197.512(1).  For Turner to prevail on his claims under the Takings Clause, a federal court must determine, at least, that the County impermissibly applied the opening bid requirement under Florida Statutes § 197.502(6).[17]

---

[17] Upon reviewing Florida law, the dissent concludes that the opening bid for Turner's property was established at the time of the opening sale (when it still benefited from the homestead exemption), and the opening bid could not be reduced through the final sale of the property.  Dissenting Op. at 6–7.  So the dissent finds that this case would not require any kind of guesswork about the relevant application of state law and that federal courts are just as equipped to adjudicate the claims as state courts.  The dissent's interpretation of the statute may very well be a correct interpretation of Florida law.  But it may not be.  Counsel for the County argued that the opening bid would have been recalculated at the time the homestead-status change was certified.  Oral Arg. at 17:02–18:22.  And if that's permissible, then there could not have been an unlawful taking under Turner's theory because Turner would not have been entitled to the homestead opening-bid calculation at the time the property was sold.  Counsel pointed out that the First District Court of Appeal of Florida has explained, albeit two decades ago, that the opening bid is calculated *after* a property is included on the "lands available for taxes" list and approved of a county's calculating the opening bid *after* it received offers for purchase on the property.  *Perdido Bay P'ship v. Warner*, 837 So.2d 1154, 1154 (Fla. Dist. Ct. App.

Turner's requested remedies, and their implicated interpretations of those state-law provisions, "may be far from what the [Florida] Legislature would have willed." *Id.* at 429. And state courts "have greater leeway to avoid constitutional holdings by adopting 'narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.'" *Id.* at 428 n.7 (quoting *Moore v. Sims*, 442 U.S. 415, 429–30 (1979)). That is what would happen if the Florida courts side with the County's interpretation of the state statutes.

"Federal judges, moreover, are bound by the [Tax Injunction Act]; absent certain exceptions, the Act precludes relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design." *Id.* at 428 (citation omitted). Turner's interpretation of § 197.502(6) could diminish state revenues. After all, his property didn't sell until it was listed for a second time with a lower opening bid amount. Had the County required a minimum bid for one-half of the assessed value in the second sale, the property might not have sold, thereby depriving the County from collecting the delinquent taxes. Further, because the sale did not, in fact, result in a surplus, the damages Turner seeks would have to be paid out of state revenue unrelated to the sale itself.

---

2003). Because this case requires the presiding court to make significant decisions about the meaning of Florida law—for instance, when Florida law permits opening bids to be set or recalculated—we conclude that state courts are better positioned than federal courts to resolve these claims.

22-13159              Opinion of the Court                25

Turner's citations to other decisions do not persuade us otherwise. *See Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021); *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020); *Coleman ex rel. Bunn v. District of Columbia*, 70 F. Supp. 3d 58 (D.D.C. 2014). To be sure, the plaintiffs in *Dorce*, *Freed*, and *Coleman* all challenged the government's retention of the surplus in tax deed sales rather than their tax liabilities. But unlike those plaintiffs, Turner challenges the mechanics of the tax deed sale itself because here there was no surplus. If there was a surplus, Turner would have received it under Florida law. *See* Fla. Stat. § 197.582(2)(a). That difference is critical. It means Turner's claims are more than the "post-collection federal constitutional violations" at issue in the cases he cites. *See Freed*, 976 F.3d at 734. Instead, he directly challenges the sale process by which the state collected proceeds to satisfy his tax liabilities.

Even if we found these cases persuasive, we still have our own precedent to contend with. Our precedent puts in granite our conclusion that the relief Turner requests would risk disrupting Florida's tax administration. *See Winicki*, 783 F.2d at 1569–71. In *Winicki*, the plaintiffs brought a putative class action alleging that a homestead tax exemption statute violated their constitutional rights and sought damages under § 1983.[18] *Id.* at 1568. The district court dismissed their complaint under the comity doctrine. *See id.*

---

[18] The homestead exemption statute "provided for an enhanced property tax exemption for homeowners who had been permanent residents of . . . Florida for five consecutive years prior to claiming an exemption." *Winicki v. Mallard*, 783 F.2d 1567, 1568 (11th Cir. 1986).

at 1571. At the time the plaintiffs' complaint was dismissed, the Florida Supreme Court had ruled the statute unconstitutional, and the Florida legislature formally repealed it. *Id.* Because there was nothing to change in Florida's tax system to grant them damages, the plaintiffs argued that the comity doctrine was inapplicable. *Id.* at 1571.

We disagreed. *Id.* We explained that "the comity doctrine . . . should not be so narrowly read." *Id.* And we reiterated that damages actions would hale state officers into federal court every time a taxpayer alleged a § 1983 claim. *See id.* Entertaining those claims would interfere with "rightful independence of state governments" over their tax administration. *Id.* (quoting *Fair Assessment*, 454 U.S. at 115–16).

The same is true here. Of course, Turner challenges the County's application of Florida statutes as to his property, rather than the facial validity of the statutes. Still, "a judicial determination of official liability for the acts complained of, even though necessarily based upon a finding of bad faith, would have an undeniable chilling effect upon the actions of all County officers governed by the same practicalities . . . ." *Fair Assessment*, 454 U.S. at 115. If the County's administration of tax deed sales in situations like Turner's "is indeed unconstitutional, surely the [Florida] courts are better positioned to determine—unless and until the [Florida] Legislature weighs in—how to comply with the mandate of" procedural due process, the First Amendment, and the Takings Clause. *See Levin*, 560 U.S. at 429.

B. *Availability of Plain, Adequate, and Complete State Remedies*

Risk of disruption aside, comity concerns yield when there are no state court remedies that are "plain, adequate, and complete." *Fair Assessment*, 454 U.S. at 116.[19] A state court remedy meets these "minimal *procedural* criteria" only when "it 'provides the taxpayer with a "full hearing and judicial determination" at which she may raise any and all constitutional objections to the tax.'" *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982) (citation omitted) (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 514 (1981)). It need not "be the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Waldron v. Collins*, 788 F.2d 736, 738 (11th Cir. 1986) (quoting *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir. 1972)). To survive dismissal under the comity doctrine, it is the plaintiff's burden to show that these criteria are not met. *See Winicki*, 783 F.2d at 1570. With that in mind, we explore whether Turner was "precluded from enjoying a full hearing and judicial

---

[19] Although we explain above why our remedial options are constrained by the Tax Injunction Act, we need not decide whether the Act would itself block Turner's suit "[b]ecause we conclude that the comity doctrine justifies dismissal." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 432 (2010). That said, we note that there is "no significant difference" between the Tax Injunction Act's "plain, speedy and efficient" state remedy and the comity doctrine's "plain, adequate, and complete" state remedy. *See Fair Assessment in Real Est. Ass'n v. McNary*, 454 U.S. 100, 116 n.8 (1981).

determination in the Florida courts," or whether he had access to a plain, adequate, and complete state remedy. *Id.* at 1571.

As detailed above, Florida's Taxpayer's Bill of Rights guarantees that its property owners are protected during the tax levy, assessment, collection, and enforcement processes. Fla. Stat. § 192.0105. Those protections include the right to petition the value adjustment board from denials of a homestead exemption and to seek review of the board's decision in the local circuit court. *See id.* § 196.151. And, of relevance to Turner's case, the Florida statutes empower the circuit courts with "original jurisdiction at law of all matters relating to property taxation." Fla. Stat. § 194.171(1).

Turner directly challenges the tax deed sale because it allegedly proceeded without notice and the County's misconduct resulted in the absence or loss of an expected surplus. But Florida courts can and have gone so far as to void tax deed sales. *See, e.g.*, *Vosilla*, 944 So. 2d at 300–01 (holding that a tax deed sale conducted without adequate notice violated the property owners' due process rights); *Schafer v. Abreu*, 905 So. 2d 947, 948 (Fla. Dist. Ct. App. 2005) (per curiam) (holding that the county tax collector failed to provide adequate notice under Fla. Stat. § 197.502 and "remand[ing] with directions to invalidate the tax deed sale"); *Cape Atl. Landowners Ass'n v. County of Volusia*, 581 So. 2d 1384, 1386 (Fla. Dist. Ct. App. 1991) ("A tax deed is void where requirements of notice to the titleholder are not strictly followed. The validity of the underlying tax assessments and compliance with all constitutional and

statutory conditions prerequisite to their issuance.") (citation omitted); *Surna Constr., Inc. v. Morrill*, 50 So. 3d 47, 53 (Fla. Dist. Ct. App. 2010) (holding that the property owner was denied due process and affirming the trial court's order "voiding the tax sale"); *Horne v. Miami-Dade County*, 89 So. 3d 987, 988–89 (Fla. Dist. Ct. App. 2012) (unwinding a tax deed sale and remanding for an evidentiary hearing to determine whether the county provided adequate notice).

Turner has not met his burden to show why he could not have done the same. He is correct that Florida law applies a sixty-day limit to tax assessment challenges. *See* Fla. Stat. § 194.171(2). But—as his brief makes clear—Turner is not challenging any tax assessment. And because Turner's claims are "not a challenge to the assessment," his "claim[s are] not barred by subsection 194.171(2)." *See Vill. of Doral Place Ass'n v. RU4 Real, Inc.*, 22 So. 3d 627, 630 (Fla. Dist. Ct. App. 2009). Put differently, if Turner's claims are not "merely an attempt to circumvent [his] failure to properly and timely challenge the tax assessment of [his] propert[y] as required by section 194.171(1)," we see no reason why he couldn't have brought them in state court. *See Ward*, 894 So. 2d at 816. Florida law provides a plain, adequate, and complete remedy. "The certain availability of this remedy must not be confused with the failure to obtain the desired end through the proper means." *Rodriguez v. Steirheim*, 465 F. Supp. 1191, 1195 (S.D. Fla. 1979), *aff'd*, 609 F.2d 1007 (5th Cir. 1980).

## IV.  Conclusion

In sum, resolution of Turner's constitutional claims of misconduct by the County in its administration of tax collection risks disrupting Florida's taxation efforts.  Comity "serves to ensure that 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.'"  *Levin*, 560 U.S. at 431 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).  We cannot say that "nothing would be lost in the currency of comity or state autonomy by permitting [Turner] to proceed in a federal forum."  *See id.*  And because the Florida courts provide adequate, plain, and complete remedies, we see no reason why the District Court should have interfered.  We therefore hold that the District Court did not abuse its discretion by abstaining under the comity doctrine.  And we affirm its judgment.

**AFFIRMED.**

22-13159                  NEWSOM, J., Dissenting                  1

NEWSOM, Circuit Judge, dissenting:

I respectfully dissent, but I'm not going to make a big stink about it. I agree with the majority that whether the so-called "comity doctrine" bars Turner's action is "a close call." Maj. Op. at 19. The majority finds that doctrine applicable. Because I'm generally skeptical of judge-made abstention rules, and because I don't think the comity doctrine squarely applies here, I lean the other way and would allow Turner's suit to proceed.

★  ★  ★

As an initial matter, I'm suspicious of court-concocted abstention rules that, in substance if not form,[1] deprive federal courts of jurisdiction that the Constitution expressly authorizes and that Congress has expressly vested. I agree with Chief Justice Marshall, who explained more than two centuries ago that federal courts "have no more right to decline to exercise the jurisdiction which is given, than to usurp that which is not given"—both, he said, are "treason to the [C]onstitution." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). At the very least, I agree with the Supreme Court's more recent (if slightly less uncompromising)

---

[1] Although I'm doubtful that the various abstention doctrines are *actually* jurisdictional, they have the effect, in operation, of depriving courts of jurisdiction that they would otherwise have. In *Levin v. Commerce Energy, Inc.*, the Supreme Court described the comity doctrine as a "prudential" limit—but one that "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." 560 U.S. 413, 421, 432 (2010). *Cf.* Fred O. Smith, Jr., *Undemocratic Restraint*, 70 Vand. L. Rev. 845, 864–65 (2017) (exploring whether so-called "*Younger* abstention" is prudential or constitutional).

22-13159                NEWSOM, J., Dissenting                2

admonition that "'[a]bstention rarely should be invoked, because federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." Maj. Op. at 18 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). In any event, all here seem to agree that abstention—pursuant to the "comity doctrine" or otherwise—"is the exception, not the rule." *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). That's my starting point.

Against that backdrop, the question is whether the comity doctrine should be applied "broadly," as the majority says, *see* Maj. Op. at 19, or instead circumspectly, as the exception that it is. I'd vote for the latter. As the majority correctly observes, the Supreme Court in *Levin v. Commerce Energy, Inc.* "outlined a non-exclusive 'confluence of [three] factors' to determine whether" the comity doctrine should be deployed to preclude a lawsuit that otherwise falls within the federal courts' jurisdiction. *Id.* (quoting 560 U.S. 413, 431 (2010)). Taking its cue, the majority "pull[s] out the scales and weigh[s] these factors." Maj. Op. at 20. I'll do the same; I just see the balance a little differently.[2]

Everyone agrees that the first factor "weighs against invoking the comity doctrine" because Turner's suit alleges that state

---

[2] To be honest, this sort of freewheeling balancing hardly seems like the proper way to determine the extent of federal-court *jurisdiction*. But the majority isn't to blame; it's just doing what the Supreme Court has told it to do.

22-13159                    NEWSOM, J., Dissenting                    3

taxing authorities violated his "fundamental rights" under the First, Fifth, and Fourteenth Amendments. *Id.* Easy peasy.

As for the second factor, the majority rightly recognizes that its application here is "trickier." *Id.* The majority acknowledges that Turner isn't concerned with his "competitive position" within the meaning of the Supreme Court's opinion in *Levin*. *Id.* at 22. But "contextualiz[ing]" the Court's decision there, the majority posits that the "heart of the second factor" is really "whether the plaintiff objects to his or her own tax situation"—which it says Turner does. *Id.* at 22–23. I disagree. In fact, Turner has expressly renounced any argument regarding his "tax situation." Here, in relevant part, is how Turner's brief describes his position:

> Turner does not contest his liability for state taxes. Turner is not challenging—wholesale—any state taxation law as unconstitutional. Turner is not challenging the taxes he owed. Turner is not challenging the government's right to sell his property via tax deed sale. Rather, Turner challenges the unlawful—and retaliatory—sale of his property below the statutorily required amount that intentionally resulted in Turner receiving no funds from the sale of property he owned since at least 1995.

Br. of Appellant at 27. So, at least as I understand things, Turner isn't challenging anything about his "tax situation"—he just wants his share of the money the government shortchanged him by selling his property at a fraction of its assessed value.

22-13159            NEWSOM, J., Dissenting                 4

Which leads us to *Levin*'s third factor. Because the first and (I think) second factors aren't met, I tend to doubt the third could salvage the comity doctrine's application here anyway. But even if it could, I'm not at all sure that it's satisfied either. This one will take a minute to unpack, but the bottom line is that it's just not clear to me that state courts are any "better positioned" than we are to correct the constitutional violations that Turner claims, or that Turner's suit would require us to engage in any speculation about the meaning or application of state law. *See* Maj. Op. at 22.

In *Levin*, the Supreme Court confronted a business's allegation that a state tax law was "discriminatory"—specifically, that it gave preferential treatment to the business's competitors. *See* 560 U.S. at 417. The Court abstained under the comity doctrine on the ground that the state courts would presumably know better than their federal counterparts whether the state legislature would have wanted to address the alleged inequality by (in my terms) "leveling up"—*i.e.*, increasing the competitors' tax burden—or "leveling down"—*i.e.*, reducing the challenger's burden. The question, the Court said, boiled down to what the state legislature "would have willed had it been apprised of the constitutional infirmity." *Id.* at 427. And answering that question, the Court thought, would require federal courts to speculate about the meaning and operation of state law.

Deciding Turner's case wouldn't require similar guesswork. Of course, the mere fact that a case presents a difficult state-law question has never been a sufficient reason to abstain. *Cf., e.g.*,

22-13159                NEWSOM, J., Dissenting                5

*Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974); *Meredith v. Winter Haven*, 320 U.S. 228, 234 (1943). But for reasons I'll explain, the applicable state law here isn't particularly murky, in any event.

The majority accurately sets the stage: After Turner failed to pay his property taxes, the local authorities issued a "tax certificate," and when the taxes remained unpaid two years later, they noticed and conducted a public auction. Importantly here, as the majority notes, "[a]t that time, Turner's property still had a valid homestead exemption and an assessed value of $30,595." Maj. Op. at 12. The majority also accurately describes the "crux" of Turner's claim: (1) Under Florida law, "his property should have been sold for one-half of the assessed value because at the time of the opening bid his property still had a homestead exemption"; (2) "[h]ad it been sold for that amount, [he] would have received any residual after his back taxes were deducted"; and (3) the local authorities sold his property for a fraction of its assessed value—$3,540.45—for reasons and in a manner that violated the U.S. Constitution. *Id.* at 15–16.

So, what's the governing state law? The opening bid for property like Turner's is set by statute. Florida law provides that "[o]n property assessed on the latest tax roll as homestead property," the opening bid "shall include, in addition to the amount of money required for an opening bid on nonhomestead property, an amount equal to one-half of the latest assessed value of the homestead." Fla. Stat. § 197.502(6)(c). All agree that at the all-important moment of the "opening bid," Turner's property was listed "as a homestead property" within the meaning of § 197.502(6)(c).

22-13159                    NEWSOM, J., Dissenting                    6

Accordingly, Turner contends—and this much seems undeniable—the opening-bid number should have included "an amount equal to one-half of the latest assessed value of the homestead." *Id*. But, Turner complains—and again, I think undeniably—it didn't. Just file that away.

For properties that don't sell at public sale—which Turner's didn't—"the clerk shall enter the land on a list entitled 'lands available for taxes' and shall immediately notify the county commission that the property is available." *Id*. § 197.502(7). During the property's first 90 days on this list, the county can either purchase the property *"for the opening bid"* or waive its rights to purchase the property. *Id*. (emphasis added). After 90 days, "any person, the county, or any other governmental unit may purchase the property from the clerk, without further notice or advertising, *for the opening bid*." *Id*. (emphasis added). Importantly here, Florida law (as I read it) provides only two ways in which the "opening bid" number can change between the initial public-sale offering and the subsequent land-available-for-taxes offering: first, interest on the opening bid continues to accrue through the month of sale, *id*.; and second, the taxes that would have been due are added to the minimum bid, *id*. § 197.502(8).[3]

Again, it is undisputed that on the date Turner's property was listed for public sale, the tax rolls showed his property as a

---

[3] If, however, the county or government purchases the land for its own use, it is possible for the county commissioners to cancel omitted years' taxes. *Id*. § 197.502(7).

22-13159              NEWSOM, J., Dissenting                    7

homestead—which means, in accordance with § 197.502(6)(c), that Turner's property had to be listed for the amount required for a nonhomestead property *plus* "an amount equal to one-half of the latest assessed value of the homestead." But it wasn't—it was listed for the value of a *non*homestead property. There were no bidders at the public sale; so, in accordance with Florida law, the clerk placed Turner's property on a list of lands available for taxes. The only question, therefore, is whether any of the ways specified in Florida law for altering the opening-bid number applies to this case. But none does—certainly none that could have *reduced* the value of Turner's property. Indeed, the only two means of alteration of which I'm aware would have *increased* the number by adding interest or taxes due. *See* Fla. Stat. § 197.502(7), (8). And so far as I can tell, there's nothing in the law that would have permitted the authorities to reassess the opening bid so as to adjust it downward after the removal of Turner's homestead exemption.

★  ★  ★

Bottom line: It's reasonably clear to me that the local authorities misapplied Florida law when they sold Turner's property for pennies on the dollar. Deciding Turner's case—which alleges that they did so for unconstitutional reasons and in an unconstitutional manner—wouldn't call into question Florida's property-tax scheme or his individual tax liability, nor would it require any real guesswork about the meaning or application of state law. I see no compelling justification for invoking a judge-made abstention doctrine to decline to hear a case that fits comfortably within the

22-13159                NEWSOM, J., Dissenting                8

federal courts' jurisdiction as authorized by the Constitution and prescribed by Congress.  Accordingly, I respectfully dissent.